ADAMS *v.* HENRY.

1. PHYSICIANS AND SURGEONS—NEGLIGENCE—MALPRACTICE—DILIGENCE IN ATTENDING PATIENT.
   A physician who had attended a patient threatened with miscarriage resulting from an accident, and who, after being summoned by telephone and notified of the approaching travail, failed to attend promptly as he had promised, and arrived two hours after the birth of the child, notwithstanding repeated summonses over the telephone, was not entitled to a directed verdict, where plaintiff claimed and offered to show injuries resulting from his alleged neglect.

2. APPEAL AND ERROR—ACTION PENDING—PLEA IN BAR.
   On error from a directed verdict and judgment in favor of defendant, a physician, the point that he had brought suit for services rendered to plaintiff and recovered a judgment in justice's court, which he pleaded as a bar to plaintiff's action for malpractice, will not be considered if it was not passed upon by the trial court.

Error to Wayne; Murfin, J. Submitted February 15, 1911. (Docket No. 193.) Decided May 8, 1911.

Case by Nellie Adams against Thomas J. Henry for malpractice. A judgment for defendant, on a verdict directed by the court, is reviewed by plaintiff on writ of error. Reversed.

*James & Kilpatrick* (*McHugh & Gallagher*, of counsel), for appellant.

*Washington I. Robinson*, for appellee.

This is an action against defendant, a physician, for malpractice. On December 26, 1907, plaintiff, who was then in an advanced state of pregnancy, claims to have received a jar while alighting from a street car which brought on premature labor. On that evening defendant

was called and prescribed for her. Next morning, the
27th, defendant again called, and advised her that she
would shortly be delivered. In the afternoon plaintiff's
condition continued to be serious, and she says she suf-
fered great pain. During the afternoon defendant called
upon her five or six times, the last time about 7 o'clock p.
m. Upon the occasion of the last visit, plaintiff testified
to the following statement made to her by the defendant:

"He said he would send a trained nurse down, that my
condition was growing worse, and that he would be there
at 11 o'clock prompt, maybe a little earlier."

Defendant did not return until 2 o'clock a. m. of the
28th. Plaintiff's child had meantime been born at five
minutes after 12 a. m. Plaintiff in her declaration sets
out the contract of employment, and avers that defendant
wantonly neglected and refused to give her the care and
attention her condition required during parturition, and
charges that—

"Through the wanton neglect and negligence of the
defendant, she, the said plaintiff, was torn and lacerated
in and about the cervix or uterus, and unnecessarily suf-
fered great pain and agony in giving birth to said child
without the proper medical attendance, through the wan-
ton neglect and negligence of said defendant, and in and
about the uterus, and was made to suffer great pain and
agony by the wanton neglect and negligence of the de-
fendant in wantonly and negligently refusing to call and
attend said plaintiff as he, the said defendant, had prom-
ised so to do, and as it was his duty to do in and about
the premises."

Plaintiff further charged that defendant was negligent
in his subsequent treatment of her, in that he had not
himself repaired or advised the reparation of the lacerated
parts. As to defendant's knowledge of her condition, she
testified that:

"On February 10th, when he made an examination
after I was operated on (this operation was the curetting
of the uterus), he told me that I had bad lacerations of
the womb, and a bad tear. I asked if there was any way

for those things to be repaired. He didn't give me a definite answer."

Plaintiff offered to show that shortly after 11 o'clock her husband had called defendant at his office by telephone, that defendant had himself answered the telephone, and, upon being advised of plaintiff's condition, stated that he would at once attend her; that, after waiting a time, defendant was again called, and again agreed to "come right over;" that a third time defendant was called, this time a few minutes after the child was born; that he was advised of the situation, and again agreed to respond at once, but did not arrive until 2 o'clock, when he stated that he had been at home, drinking wine with some friends. Plaintiff made this further offer:

"We propose to show that the defendant was culpably negligent, after ascertaining the lacerations and the tear, in not repairing them, and that eventually, under date of October 13, 1908, a surgeon did repair the lacerations, did repair the tear, and that that was a proper method of procedure in order to relieve her sufferings, and that that method should have been adopted by the defendant in the first instance. We propose to show that his first operation was for the sole purpose of scraping the womb, and that subsequently it was his duty, after ascertaining the more serious condition in which she was, namely, a rupture of the perineum and the lacerations, it became and was his duty, after learning that, to take some action with reference to either medical treatment or the performance of an operation in order to relieve that condition, and that he failed to either treat her for the condition that he found to exist, or to advise an operation or to see that an operation was performed."

Whereupon the learned circuit judge directed a verdict for the defendant in the following charge:

"Well, gentlemen of the jury, during your absence, I have asked from counsel for this plaintiff what specific testimony he could or would produce which would show any place that the defendant in this case had neglected any duty which he owed to the plaintiff. He has been unable to tell any testimony. He has been unable to

make the offer of proving any specific concrete testimony to prove carelessness or negligence. He does not know, and is not prepared to show, what medicines were given to this woman, nor is he prepared to show that the medicines that were given were proper medicines or not proper. In other words, the result of the colloquy that we have had in your absence has demonstrated that his offer of proof, made in very general terms, will go simply to the effect that the woman did not get well while under this doctor's treatment, coupled with the allegation in the declaration and in the offer to prove that the doctor was late in getting to this premature birth. I have asked counsel to show me any authority which holds, as a matter of law, that because a doctor is late in getting to the bedside of a woman about to be confined that it is actionable. He has failed to produce any such authority, and I question the existence of any such authority. It seems to me that it would be a most startling rule of law to announce that any doctor who is summoned to attend a woman in confinement, could be held liable in a lawsuit if he was late getting to such a patient. I know of no such rule of law. My attention has not been called to any such case, and I question if there is any such case.

"Aside from that, it is further urged by counsel that this physician neglected his duty in the premises because he did not advise an operation for certain lacerations. He does not assume to state in his offer to prove, whether that is the sole and only way of curing this condition, or whether there was anything else that could have been done, aside from that which this doctor was doing. All of us, gentlemen of the jury, know, as a matter of common knowledge, that doctors frequently advise operations. Some doctors discourage operations. Some patients want operations, and some patients don't want operations. There is no offer to prove here, yet made by counsel, that would indicate in the slightest degree that anything this doctor did was careless or a wilful neglect. The whole case as outlined by him, and as detailed by his client, evidences that a condition arose which caused apparent difficulty in his treatment; but that that condition was due in any way to the neglect of this physician, there is no testimony yet introduced, nor has counsel been able to assure this court, during the colloquy, that any such testimony can be produced. And because, gentleman, I do not think it is actionable, because a doctor does not cure

a patient, I think it my duty to stop this case and direct you to render a verdict of no cause of action. You may take such a verdict, Mr. Clerk."

Plaintiff has removed the case to this court for review by writ of error.

BROOKE, J. (*after stating the facts*). We are of opinion, if plaintiff had been permitted to produce, and had been able to produce, testimony tending to establish the statements contained in the offer, that it cannot be said, as a matter of law, that defendant was not negligent. If defendant was present and responded personally to each call that is said to have been made upon him between 11 and 12:30 o'clock, and upon each occasion agreed to at once attend the plaintiff and failed to keep his promise, we think he should be held liable, if his failure to attend resulted in injury to plaintiff. We note that plaintiff did not offer to prove that the laceration of the cervix and the rupture of the perineum resulted from defendant's failure to attend as it is alleged he had agreed. The declaration contains the averment, however, and we are disposed to the view that plaintiff should have been permitted to offer such testimony as she possessed pertinent to the issue.

Defendant contends that, inasmuch as by his plea he shows that he has obtained a judgment against plaintiff in justice's court (now pending on appeal to the circuit court) for his services rendered at the time of plaintiff's confinement, the judgment operates as a bar to the present action. That question was not passed upon by the court below, and has not been briefed by plaintiff in this court. Until an adjudication is had upon the question in the circuit court, we must decline to consider it.

The judgment is reversed, and a new trial ordered.

HOOKER, MOORE, MCALVAY, AND BLAIR, JJ., concurred.