Hillsborough, } No. 3637.
Mar. 4, 1947. }

LORETTA MEHIGAN *v.* GEORGE T. SHEEHAN.

*H. Thornton Lorimer* and *Francis E. Perkins* (*Mr. Lorimer* orally), for the plaintiff.

*Sulloway, Piper, Jones, Hollis & Godfrey* (*Mr. Piper* orally), for the defendant.

JOHNSTON, J. When the defendant agreed to the relationship of physician and patient, he became obligated to use reasonable care in attending and treating the plaintiff. "He is answerable for failure to exercise the care and skill of one who is what the defendant has assumed to be. *Burnham* v. *Stillings*, 76 N. H. 122. It is not a matter of contract, for the obligation to use such care and skill as the undertaking reasonably calls for is imposed because of a privity of duty as distinguished from that of contract. *Pittsfield &c. Company* v. *Company*, 71 N. H. 522; *Edwards* v. *Lamb*, 69 N. H. 599." *Jackson* v. *Company*, 86 N. H. 81, 82, 83. Liability might be found if a physician or a surgeon "had acted from negligence and carelessness, contrary to what must have been his better knowledge and judgment, if he had given proper attention to the case." *Leighton* v. *Sargent*, 27 N. H. 460, 475. No claim is made that the defendant did not have the knowledge, training, skill and other qualifications of the ordinary practitioner of his profession in the same place or in similar localities. *April* v. *Peront*, 88 N. H. 309; *Michael* v. *Roberts*, 91 N. H. 499.

The rule with regard to the need of expert testimony in an action for malpractice has been stated as follows: "Expert testimony is not

necessary for the proof of negligence in nontechnical matters or those of which an ordinary person may be expected to have knowledge." 41 Am. Jur. 240, citing *Whetstine* v. *Moravec*, 228 Ia. 352 and *Russell* v. *Newman*, 116 Kan. 268. In the present case the issues raised by the plaintiff are within the intelligent comprehension of a jury. They include whether or not the defendant forgot to treat for the breasts after the miscarriage, whether two alleged telephone calls were made on Sunday morning and whose fault it was, if such calls were put through, that the plaintiff's need of medical attention was not made known to the defendant. The defendant admitted concerning the duty of attending the plaintiff as follows: "Q. Now, these telephone calls on Sunday, Doctor. If you had on Sunday morning received a telephone call around nine o'clock and another around ten or ten-thirty from Mr. Mehigan, telling you that Mrs. Mehigan was suffering terribly, you would have gone right over, wouldn't you? A. Yes, sir. Q. That would have been your duty, wouldn't it? A. Yes, sir." Whether plaintiff was suffering terribly or suffering sufficiently so that reasonable care entitled her to have the attendance and help of her physician can under the facts of this case be passed upon by the jury without the aid of experts. The calling and the need of physicians are matters of common experience. Unlike *Michael* v. *Roberts, supra,* no question is raised in this case of the standards of professional skill but simply of negligent failure to give such medical care as would have been exercised if it were not for the alleged negligence.

There is evidence from which a jury could find causal negligence on the part of the defendant physician that resulted in unnecessary physical and mental suffering. Because of the flowing the doctor knew that the chances were against a normal delivery. In his experience of twenty-six years, he "had never encountered a condition where a woman started to flow at five and one-half or six months and was able to continue on in normal pregnancy." The evidence most favorable to the plaintiff is that her husband in her presence did telephone the doctor twice Sunday morning when she was in the midst of labor pains. The first time was around nine o'clock when Mr. Mehigan said that his wife had had a very bad night and complained of very bad pains and that he would like the doctor to come over. About an hour and a quarter later the husband called the doctor again and said that his wife was still suffering and asked what he could do about her pains that were getting worse and again requested the doctor to come. The doctor did not arrive until after a third call from Mr. Mehigan and one from a young woman neighbor. It is for

the jury to say whether the defendant gave proper consideration to what he knew about the plaintiff's case, whether he used due care in eliciting information from the husband at the times of the first two telephone calls, if they occurred, that would have informed him that the plaintiff was in labor and whether he was negligent in not attending the plaintiff before she had gone to the toilet, the birth taking place there. It could be found that the defendant prescribed no treatment for the milk condition in the breasts until Thursday. The testimony of the neighbor to the effect that Dr. Sheehan said concerning this treatment, "I forgot. I should have done something about that," makes a clear issue of due care.

The plaintiff's case does not show that she and her husband were conclusively guilty of contributory negligence. Although she remarked on awakening Sunday morning, "If this was the ninth month, I would swear these were labor pains," she and her husband did not know that she was in labor until informed by the neighbor and the third call was put through by the husband to the doctor after twelve o'clock. This was the first child for this couple and the jury could find that they were not necessarily negligent in failing to recognize the true facts and to give the doctor a more accurate description of the situation. They did take some thought and it could be found that they acted according to their best lights. The evidence was that the plaintiff was cooperative and at all times followed the defendant's advice and directions.

Damages cannot be given for the mere fact of the miscarriage. The evidence is that this would have occurred anyway. Nor can they be given for the physical and mental suffering that the wife would have endured under the usual circumstances that would have accompanied the miscarriage. The plaintiff is entitled to recover however for any and all pains of childbirth and of the following bodily condition that were not prevented or eased because of the negligent failure of the physician to attend or to prescribe. "There may be a recovery for the increased physical and mental suffering the wife endures on account of the non-attendance of a physician." 1 Sutherland, Damages (4th *ed.*) 352. "For his failure to do so he must answer to the plaintiff, before the jury, for at least those two hours of unalleviated suffering." *Young* v. *Jordan*, 106 W. Va. 139, 141. See also, *Adams* v. *Henry*, 165 Mich. 554. If the defendant had been in attendance, the child would have been born in bed, narcotics or other medicines could have been prescribed to relieve the pains of the mother and other medical care of her taken. The mere assuring presence of the phy-

sician at such a time would have been of comfort to which the plaintiff might be found entitled. The defendant argues that the wife cannot have damages for grief over the manner in which the child was born or for anticipation of it, which anticipation did not exist. This is true but she may recover for injured feelings attending the happening of the birth in the way that it did. Present mental suffering due to the immediate realization of what is occurring or has occurred that is not grief in retrospect, is compensable. *Prescott* v. *Robinson*, 74 N. H. 460.

*New trial.*

All concurred.