**Billie Jean STOKES, Appellant,**

**v.**

**Harold C. HAYNES, Jr., Appellee.**

Court of Appeals of Kentucky.

March 15, 1968.

As Modified on Denial of Rehearing
June 14, 1968.

William C. Jacobs, James R. Odell, Lexington, for appellant.

B. L. Kessinger, Jr., Rufus Lisle, Harbison, Kessinger, Lisle & Bush, Lexington, for appellee.

MARVIN J. STERNBERG, Special Commissioner.

This is an action for malpractice brought by appellant against the appellee, a physician, to recover damages for pain and mental suffering. Appellant charged that she experienced pain and mental suffering as the result of appellee's negligence in his failure to attend and treat her during her pregnancy and miscarriage. By pre-trial order, the issue of negligent care was eliminated. This appeal is from a judgment entered on a verdict directed in the appellee's favor at the close of appellant's evidence.

Appellant was under the medical care of the appellee during her pregnancy. He had agreed to take care of her at the birth of her child. She was hospitalized by the appellee for a period of ten days when she threatened to miscarry. On July 22, 1962, appellant was permitted to return to her home with instructions from the appellee as to her care and conduct. During the night of July 22, 1962, appellee, by telephone communication, was advised that appellant was having more cramping and was in more pain. Appellee did not personally attend the appellant but prescribed for her care and treatment over the telephone. Later the same night appellee was advised that appellant had miscarried, whereupon appellee advised further treatment to be given her and what disposition was to be made of the fetus. Several days later, at the direction of the appellee, appellant returned to the doctor's office for examination.

The salient issues are: (1) Did the appellee, on July 22, 1962, wrongfully refuse to treat the appellant at her home or at the hospital? (2) Did the court commit error in excluding from the jury certain statements alleged to have been made by the appellee?

Appellant's physical condition and her pain and suffering were vividly detailed by lay witnesses. The appellee was called to testify as if on cross-examination and other medical testimony was offered. None of the medical testimony tended to sustain appellant's plea, and she relied on lay testimony to sustain her cause of action. At the conclusion of appellant's evidence the jury was instructed by the court to return a verdict for the appellee.

■ The gravamen of the charge is that the appellee should not have permitted appellant to leave the hospital and return to her home and should have been present at the time of the miscarriage. Since there was no expert testimony to sustain appellant's cause of action, the question presented is whether the circumstances disclosed by the testimony were sufficient to bring the case within the exception to the rule that expert testimony is necessary to support a cause of action for malpractice. The exception applies "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts." Butts v. Watts, Ky., 290 S.W.2d 777, 779; Neal v. Wilmoth, Ky., 342 S.W.2d 701; Harmon v. Rust, Ky., 420 S.W.2d 563.

■ The question of just when and under what circumstances a physician treating a woman threatened with a miscarriage should keep her in the hospital or be at her side is not, in our opinion, one that can be answered on the basis of common knowledge. The testimony reveals that this is not a case coming within the exception to the rule.[1] There is no showing that if the appellee had been present at the time of the miscarriage he could have done anything for her that was not done, or that she would have suffered any less pain or distress. There is no showing that his conduct was negligent or inconsistent with the standard of care that would have been exercised by other physicians in similar circumstances to those shown in this case. In the absence of such proof, the circuit court was correct in directing a verdict for the appellee.

In view of the foregoing, it is unnecessary to determine whether the court committed error in excluding from the jury certain alleged statements made by the appellee. The appellee made no admissions against interest.

The judgment is affirmed.

OSBORNE and HILL, JJ., dissenting.

1. For a discussion of the evidence required to establish a claim in a miscarriage case, see Jarboe v. Harting, Ky., 397 S.W.2d 775 (1965).

## DISSENTING OPINION

OSBORNE, Judge.

Appellee is a physician. Appellant was his patient. It is admitted that appellee agreed to treat appellant and prescribe for her during her pregnancy and to deliver her child. After some difficulty, she was admitted to a hospital where she remained for 12 days. On July 22, 1962, upon the recommendation of appellant, she was released from the hospital and permitted to go home, arriving at home at approximately 7 p. m. on that date. Upon her arrival, she went immediately to bed. Bleeding and pain worsened shortly after her arrival and, about 8 p. m., she went to the bathroom and noticed a cord protruding from her uterus. At this point, her mother contacted the doctor. The mother's testimony, which is not disputed by the doctor, concerning this conversation was as follows:

Q—"Who did you call?

A—Dr. Haynes. It took me several calls to get him. I called his residence and they said he was at the hospital, then I called the hospital and they paged him but he didn't answer the call. I waited for awhile * * * she said as soon as she could locate him she would have him call. I got very worried about Betty (sic) and as she didn't call me * * * the girl * * * the operator * * * never did call me back, I got worried and called her again. I had * * * I asked had she located Dr. Haynes and she said yes, she had told him. * * *"

OBJECTION SUSTAINED.

Q—"Tell what happened when you finally located Dr. Haynes.

A—I told him the condition she was in and explained how she was and about that thing hanging down and asked him if he hadn't better come out there or if I hadn't better take her back to the hospital and he said no it wasn't necessary to take her back to the hospital, that she

would be alright. I said, she's sick and needs help and asked him what I should do and he said the baby would probably be born that night and I said what was I supposed to do if she did (sic) and he said well just keep her in the bed, she'll be alright and it will probably be born before daylight.

Q—Was it in fact born?

A—Yes sir. About 11:00 or sometime after that. I didn't look at the clock but somewhere around there.

Q—Where was Billie when it was born?

A—In the bed.

Q—Did you see the fetus?

A—Yes sir.

Q—Would you describe it?

A—Well, I can't say how big it was * * * it was a fully developed baby * * * had hands and feet and toes and fingers. Didn't have fingernails or toenails but it was a fully developed baby. It was small * * * it was a boy * * * you could tell everything about it. It was a fully developed baby but it was small.

Q—It was not alive was it?

A—No sir.

Q—What did you do then?

A—I called Dr. Haynes back and told him the baby was there and asked if he shouldn't come out and check her and he said no just let her stay in bed or get up and walk around, whatever she wanted to do, and to come into his office in about a week."

Appellee in his testimony admitted he undertook to care for appellant at the birth of her child and to administer recuperative care thereafter. He admitted receiving the phone calls from appellant's mother but was somewhat vague about the actual conversation. However, he did state that he was requested to come to the house and

that he did not do so. The question now before the court is, "Was appellant's proof sufficient to raise a question which should have been submitted to the jury as to appellee's failure to attend and render care and treatment?" The majority opinion holds the evidence to be insufficient to take the case to the jury, the court stating, "There is no showing that if the appellee had been present at the time of the miscarriage he could have done anything for her that was not done, or that she would have suffered any less pain or distress." If this be true, then doctors are of no benefit at the delivery of any child or on the occasion of a miscarriage. Certainly this birth was no less painful or harrowing than any other. Why did appellee take appellant's money if she did not need a doctor? Certainly it could not be anticipated that anything worse could have happened to her than what actually took place. No competent blue grass veterinarian would have failed to have attended a mare giving birth to a foal under such circumstances. The actions of the doctor were deplorable. With the action of this court in approving the conduct of the doctor, I vehemently disagree.

We held in Engle v. Clarke, Ky., 346 S. W.2d 13, that the failure of a physician to attend and treat his patient was a sufficient showing of negligence to go to the jury. I can see no distinction between that case and this one. It has been held in other jurisdictions in miscarriage cases identical to this that the question should be submitted to the jury without expert medical testimony. See Mehigan v. Sheehan, 94 N.H. 274, 51 A.2d 632 (1947). In that case a nonsuit was granted at the close of plaintiff's evidence. In reversing, the court said:

"Whether plaintiff was suffering terribly or suffering sufficiently so that reasonable care entitled her to have the attendance and help of her physician can under the facts of this case be passed upon by the jury without the aid of experts. The calling and need of physicians are matters of common experience. * * * The plaintiff is entitled to recover * * * for any and all pains of childbirth and of the following bodily condition that were not prevented or eased because of the negligent failure of the physician to attend or to prescribe. 'There may be a recovery for the increased physical and mental suffering the wife endures on account of the non-attendance of a physician, * * *' 1 Sutherland, Damages, 4th Ed., 352. 'For his failure to do so he must answer to the plaintiff, before the jury, for at least those two hours of unalleviated suffering.' Young v. Jordan, 106 W.Va. 139, 141, 145 S.E. 47. See also, Adams v. Henry, 165 Mich. 554, 131 N.W. 62, Ann. Cas.1912C, 829. If the defendant had been in attendance, the child would have been born in bed, narcotics or other medicines could have been prescribed to relieve the pains of the mother and other medical care of her taken. The mere assuring presence of the physician at such a time would have been of comfort to which the plaintiff might be found entitled."

Upon similar facts the Michigan court held in Adams v. Henry, supra, that the plaintiff was entitled to go to the jury upon the showing that the attendant physician had delayed in attending upon the birth of her child. I do not think it unreasonable to expect any man to perform the services for which he has been paid.

For the foregoing reasons, I respectfully dissent.

HILL, J., joins in this dissent.