HENRY M. STEINERT, as Executor, etc., of CORNELIUS MURPHY, Deceased, Plaintiff, v. THE BRUNSWICK HOME, INC., and MORRIS ROBERT KEEN, Defendants.

Supreme Court, Nassau County, November 3, 1939.

*Salter & Steinkamp* [*Winfred C. Allen* of counsel], for the plaintiff.

*Donald A. Gray* [*F. J. O' Kane* of counsel], for the defendant The Brunswick Home, Inc.

*Lorenz J. Brosnan,* for the defendant Morris Robert Keen.

STEINBRINK, J. In the trial of this action before the court and a jury the following facts were disclosed: The decedent, Cornelius J. Murphy, consulted a physician of his own choosing, the defendant Keen, who advised a cystoscopy and recommended hospitalization at the defendant hospital, a private, non-charitable institution. The decedent entered the hospital on July 2, 1937, and soon thereafter was prepared for the operation. A nurse in the hospital's employ was in charge of the operating room. When Dr. Keen was ready to perform the cystoscopy he asked the nurse for a five per cent solution of cocaine, informing her that there was a ten per cent solution in the cabinet. A cocaine solution is colorless and odorless. The nurse poured out two drams, to which she added an equal amount of distilled water. Dr. Keen drew the solution into a syringe and injected it into the decedent's urethra preliminary to passing a catheter. Upon detecting an unlooked-for reaction, Dr. Keen asked the nurse to show him the bottle from which the solution had been prepared and then noticed that it contained sodium hydroxide, likewise a colorless and odorless liquid. He immediately did all that he could for the patient, but as a result of the injection of the sodium hydroxide solution the decedent suffered severe burns, which developed into strictures. The decedent died some fifteen months later from other causes and the executor of his estate sued to recover for the pain and suffering of the decedent and for medical expenses incurred in treatment of the injuries sustained.

The general competency of the nurse was not questioned. There was no suggestion that the hospital was negligent either in hiring or retaining her in its employ.

The jury brought in a verdict for the defendant Keen and against the defendant hospital in the sum of $10,000. Prior to submission of the case to the jury, the defendant hospital moved to dismiss

the complaint as against it. Decision on the motion was reserved. Upon the coming in of the verdict, defendant hospital renewed its motion to dismiss the complaint and moved further to set the verdict aside. Both motions proceeded on the claim that the hospital, even though privately maintained, is not responsible for the negligence of its nurse in the treatment of patients.

A hospital, whether charitable or private, is immune from liability by reason of the negligence of its doctors or nurses with respect to any matter relating to the patient's medical care and attention. (*Schloendorff* v. *Society of the N. Y. Hospital*, 211 N. Y. 125; *Phillips* v. *Buffalo General Hospital*, 239 id. 188; *Matter of Renouf* v. *N. Y. C. R. R. Co.*, 254 id. 349.) In the *Schloendorff* case the plaintiff sought to charge the hospital, a charitable institution, with liability for the unauthorized performance of an operation on her person by physicians attached to the hospital. Judgment entered on a verdict directed for the defendant was affirmed. In stating the rule that a hospital maintained as a charitable institution is not liable for the negligence of its physicians and nurses in the treatment of patients, the court cited numerous authorities which seemed to have placed the exemption on two grounds — implied waiver of the right to hold a charitable institution responsible for the negligence of its servants in administering the charity and the absence of the relationship of master and servant between the hospital and its doctors or nurses. The court rested its decision on the second ground, namely, the inapplicability of the rule of *respondeat superior*. Referring to allegedly unauthorized operation the court stated (at p. 132): " The wrong was not that of the hospital; it was that of physicians, who were not the defendant's servants, but were pursuing an independent calling, a profession sanctioned by a solemn oath, and safeguarded by stringent penalties. If, in serving their patient, they violated her commands, the responsibility is not the defendant's; it is theirs. There is no distinction in that respect between the visiting and the resident physicians. * * * Whether the hospital undertakes to procure a physician from afar, or to have one on the spot, its liability remains the same." The court then went on to say: " It is true, I think, of nurses as of physicians, that in treating a patient they are not acting as the servants of the hospital." In the *Phillips* case the doctrine of implied waiver was characterized as " logically weak " and resting " on the patent fiction that the patient has voluntarily relinquished a known right by coming to the hospital for treatment " (p. 190). The doctrine was completely rejected by the Court of Appeals in *Sheehan* v. *North Country Community Hospital* (273 N. Y. 163).

A hospital is not exempted from liability simply because it is a charitable institution. The exemption follows because of the nature of the hospital's undertaking to its patients. " Such a hospital undertakes, not to heal or attempt to heal through the agency of others, but merely to supply others who will heal or attempt to heal on their own responsibility." (*Matter of Bernstein* v. *Beth Israel Hospital*, 236 N. Y. 268, 270.) The rule admits of no logical distinction between institutions maintained by charity and those operated for profit. As was said in *Matter of Renouf* v. *N. Y. C. R. R. Co.* (*supra*, p. 351): " This rule of relationship between employer and nurse is not limited in its application to charitable corporations, although it has often been applied to relieve such corporations from liability for the negligent acts of physicians and nurses employed by them in the treatment of patients. * * * It rests on the fact that one who employs such a nurse to take care of an injured person undertakes, not to treat the employee through the agency of the nurse, but to procure a nurse for the special purpose for which her services are required." While the *Renouf* case merely held that a nurse specially engaged by the railroad to render service to an injured person is not an employee of the railroad, within the meaning of the Workmen's Compensation Act, it was regarded by the Appellate Division of this department as overruling *Robertson* v. *Towns Hospital* (178 App. Div. 285), which imposed upon a private hospital the duty of treating and safeguarding its patient. (*Mieryjeski* v. *Bay Ridge Sanitarium, Inc.*, 237 App. Div. 851. See, also, *Hendrickson* v. *Hodkin*, 250 id. 619, 620; revd. on other grounds, 276 N. Y. 252.)

The action of the nurse in preparing the solution upon orders of the physician was not in discharge of administrative duties to the hospital. " The acts of preparation immediately preceding the operation are necessary to its successful performance, and are really part of the operation itself. They are not different in that respect from the administration of the ether. Whatever the nurse does in those preliminary stages is done, not as the servant of the hospital, but in the course of the treatment of the patient, as the delegate of the surgeon to whose orders she is subject." (*Schloendorff* v. *Society of the N. Y. Hospital, supra*, pp. 132, 133.)

In accordance with the foregoing the motions by the defendant hospital are granted.