FRANCES NECOLAYFF, Respondent, *v.* GENESEE HOSPITAL, Appellant.

Fourth Department, May 8, 1946.

*Robert C. Winchell* for appellant.

*Harry A. Sessions* for respondent.

HARRIS, J. The question here involved is whether or not the defendant, a charitable hospital, is liable in damages to the plaintiff, a paying patient, for her loss due to the mistake of an interne attached to the defendant hospital.

The action was tried before a court and jury and at the conclusion of the proof both the plaintiff and the defendant moved for directed verdict. These motions the trial court, insofar as to whether there was a cause of action, resolved in favor of the plaintiff leaving to the jury the assessment of damages. Such damages were assessed by the jury in the sum of $6,500, and due to the direction of the court the jury returned a verdict of cause of action in favor of the plaintiff and against the defendant for that amount. On the minutes there was made by the defendant, and denied, a motion for a new trial. Both the appellant and respondent concede that insofar as the direction of cause was concerned only a question of law and not any of fact is present here.

The proof before the court was as follows: The plaintiff, Mrs. Necolayff, aged forty-two, residing with her husband, but employed and entitled to her own earnings and liable for her own expenses, developed an infection and was placed by her physician, Dr. Wilinsky; as a paying patient, in a private room in the hospital of the defendant, the Genesee Hospital. Dr. Wilinsky advised the plaintiff to have an operation for the purpose of removing a kidney, and this operation was performed by a surgeon named Dr. Payne, with the assistance of Dr. Wilinsky, who also did surgical work. The admission to the hospital was on October 19, 1942, and the operation was successfully performed October 24, 1942. After the operation she recovered from the same to the point where her nurse was discharged and it was anticipated by her and her doctor that Mrs. Necolayff would be discharged from the hospital forty-eight hours after the nurse left. After discharge of the nurse and on the third day of November, while she was still a patient in the hospital, about eight o'clock in the evening, an interne named Albert Moody and a nurse entered the room of Mrs. Necolayff and informed her that she was to have a blood transfusion. She said " who is that from? " and the nurse said " from your daughter Lillian " and Mrs. Necolayff replied " I haven't got a daughter "; and then the nurse and interne went ahead and gave the transfusion to Mrs. Necolayff. The transfusion was given by mistake; it had been ordered by a Dr. James S. Houck to be given to his patient, a woman named Petra Speedy, and the blood was that of a relative of Petra Speedy, named Lillian Speedy. Petra Speedy was a patient on the same floor of the hospital as Mrs. Necolayff. Dr. Houck and his patient, Petra Speedy, were strangers to Mrs. Necolayff, and no transfusion was ever ordered or intended for Mrs. Necolayff. Albert Moody was a fourth year medical student at the University of Rochester and he was fully qualified and trained to administer a blood transfusion, and the nurse with him and he constituted a team provided by the hospital for that purpose. There was a working relationship between the University of Rochester School of Medicine and the defendant, the Genesee Hospital, by which students of the school pursued their study and training in the School of Medicine by performing certain duties at the Genesee Hospital. The interne did not receive a salary; he spent about twelve hours a day at the hospital, gave transfusions, injections, aided in treatments and took and did clerical work for the private physicians, such as taking histories and making examinations and laboratory tests. He had a room at,

and received his board from, the hospital. Blood transfusions at the hospital were ordered only by a patient's attending physician or by a house physician. In this case, Dr. Houck followed the practice of leaving at the office of the hospital a filled-out form directing the giving of the blood transfusion to Petra Speedy. In the course of time, the form with its directions and the blood to be injected were given to the interne Moody and the accompanying nurse. Through some mistake (and the record does not show what mistake or whose mistake) the interne Moody entered Mrs. Necolayff's room and gave her this transfusion. During the course of this operation, and due to it, Mrs. Necolayff had a chill and a rising temperature; the transfusion was stopped and Dr. Wilinsky summoned. Mrs. Necolayff suffered severe headaches and, in later days, became mentally ill and spent some time in a State hospital for the insane. At the time of the transfusion, she was at or approaching her menopause, and the transfusion was the turning point that caused her subsequent illness and suffering. Neither the interne nor the nurse, who aided him in giving the transfusions, were produced as witnesses because they were in the armed services. This is the proof on which the trial court directed the jury to return a verdict of cause of action, and it is from this proof that it is to be determined whether or not the court acted properly in giving such direction. The proof of physical injury to the plaintiff, the consequent illness, and the loss of earnings and expenses incurred by her for recovery, support the amount of the verdict.

A search of the authorities, which includes textbooks and reported cases, does not find a case similar to that stated in the above summary of facts.

The liability of hospitals for torts has been much discussed by the courts of this and other jurisdictions. Historically, the courts have been chary to fix liability on charitable hospitals especially for torts to patients. Originally there was the theory that a patient entering a charitable hospital, due to the very nature of the eleemosynary work of the hospital, waived any claim for damage coming to the patient in the hospital, but this theory is not now extant in this State especially as to paying patients. (*Schloendorff* v. *New York Hospital*, 211 N. Y. 125; *Phillips* v. *Buffalo General Hospital*, 239 N. Y. 188; *Hamburger* v. *Cornell University*, 240 N. Y. 328.) It has been the rule in this State and now is the rule that a charitable hospital is liable for torts inflicted by the hospital on those who are not patients. (*Hordern* v. *Salvation Army*, 199 N. Y. 233; *Kellogg*

v. *Church Charity Foundation,* 203 N. Y. 191.) It seems that liability can be placed on a charitable hospital for damage resulting to a patient in the failure arising from the negligence of an administrative or ministerial act on the part of an employee. (See *Phillips* v. *Buffalo General Hospital, supra; Hillyer* v. *Governors of St. Bartholomew's Hospital,* [1909] 2 K. B. 820; *Lindsey County Council* v. *Marshall* [1937] A. C. 97.) It is very substantially established in the law of this State (providing that the hospital has exercised due care in the selection of properly qualified professional staff) that a hospital is not liable for a tort committed on a patient by a physician, nurse or other employee, in his or her performance of professional duties, because the performance of such professional duties cannot be held under the strict supervision of the hospital. However, it has been suggested that if the hospital join in a tort perpetrated by a professional member of its staff, or could have prevented such in the exercise of proper supervision of occurrences in the hospital, then there might be liability on the part of the hospital to the person injured. Here the rule of *respondeat superior* does not apply. " Such a hospital undertakes, not to heal or attempt to heal through the agency of others, but merely to supply others who will heal or attempt to heal on their own responsibility." (*Matter of Bernstein* v. *Beth Israel Hospital,* 236 N. Y. 268, 270; *Schloendorff* v. *New York Hospital, supra; Phillips* v. *Buffalo General Hospital, supra*) and even though an attaché or an attendant at a hospital be a physician, nurse or other professional person, if he or she, in his or her work at and for the hospital, performs duties that are not professional, then liability would and could attach to the hospital. (*Phillips* v. *Buffalo General Hospital, supra,* 190.)

Bearing in mind the above-stated rules of liability and non-liability, attention is now turned to the question as to whether the defendant, the Genesee Hospital, is responsible for the mistake which resulted in the transfusion being given by the interne Moody and the nurse to Mrs. Necolayff, the plaintiff. Received and kept as a patient at the hospital, plaintiff was entitled to be protected by the hospital and its employees against trespass, assault and negligence if such trespass, assault or negligence could be reasonably anticipated by the hospital. (Restatement, Torts, Negligence, §§ 315, 317, 320, Comments a, b.) In giving a transfusion, the team of interne and nurse are provided by the hospital to aid the physician ordering the transfusion. If they gave such transfusion to the proper

patient, they were doing it in the place of her physician, and in so doing would not act in any respect on behalf of, or for, the hospital. On this record, there can be no question that they were properly qualified and were assigned to do some professional work. No matter how seriously they would have erred in giving the transfusion to Mrs. Speedy, if they had done so, they could not cause liability on the hospital by such error. But the transfusion was not given to Mrs. Speedy but to Mrs. Necolayff, the plaintiff here. What happened here was at least negligence on the part of the hospital's employees, if not trespass and assault. To avoid such negligence or act of misconduct would be the duty of the hospital, and yet here such negligence and misconduct were committed by the very persons whom the hospital employed for certain duties and thus gave access to the rooms and persons of patients. Their entrance into the wrong room caused the professional nature of their errand to cease. As employees of the hospital, they, among other employees, had placed on them the duty of protecting patients. After notice was given to them by Mrs. Necolayff that she was not the patient for whom the transfusion was intended, they, as servants of the hospital, should have ceased in their effort to give the transfusion and should have protected her from the torts inflicted on her. In their failure to perform this duty, they did not act as professional persons, and there is no reason why their failure should not cast liability on the hospital. (*Dillon* v. *Rockaway Beach Hospital,* 284 N. Y. 176; *Hendrickson* v. *Hodkin,* 276 N. Y. 252, 258; *Phillips* v. *Buffalo General Hospital, supra; Schloendorff* v. *New York Hospital, supra; Rabasco* v. *New Rochelle Hospital Assn.,* 266 App. Div. 971; *Robertson* v. *Towns Hospital,* 178 App. Div. 285, 287; *Ward* v. *Saint Vincent's Hospital,* 39 App. Div. 624; *Stuart Circle Hosp. Corp.* v. *Curry,* 173 Va. 136, Note, 124 A. L. R. 186 *et seq.; City of Miami* v. *Oates,* 152 Fla. 21.)

The judgment and order should be affirmed, with costs.

All concur, except TAYLOR, P. J., who dissents and votes for reversal and for dismissal of the complaint on the ground that the doctrine of *respondeat superior* is inapplicable. (*Schloendorff* v. *New York Hospital,* 211 N. Y. 125; *Phillips* v. *Buffalo General Hospital,* 239 N. Y. 188; *Hamburger* v. *Cornell University,* 240 N. Y. 328, and *Steinert* v. *Brunswick Home, Inc.,* 172 Misc. 787, affd. 259 App. Div. 1018, leave to appeal denied 284 N. Y. 822.) Present — TAYLOR, P. J., DOWLING, HARRIS, McCURN and LARKIN, JJ.

Judgment and order affirmed, with costs.