MARIANNE J. SANTOS, as Administratrix DE BONIS NON of the Estate of ETHEL V. FLANAGAN, Deceased, Appellant, v. UNITY HOSPITAL, Respondent.

Argued May 15, 1950; decided July 11, 1950.

*James G. Purdy, Robert H. Nix, Joseph Davis* and *George H. Fitzgerald for appellant.* The Appellate Division erred in holding as a matter of law that defendant could not be held negligent in not guarding the windows of the labor room. The failure to guard the windows under the facts presented a question of fact for the jury to determine. (*Maki* v. *Murray Hosp.,* 91 Mont. 251; *Robertson* v. *Towns Hosp.,* 178 App. Div. 285; *Bickford* v. *Peck Memorial Hosp.,* 266 App. Div. 875; *Gallachicco* v. *State of New York,* 43 N. Y. S. 2d 439; *Dillon* v. *Rockaway Beach Hosp.,* 284 N. Y. 176; *Mulliner* v. *Evangelischer,* 144 Minn. 392; *Texas & Pacific Ry. Co.* v. *Behymer,* 189 U. S. 468; *Shannahan* v. *Empire Eng. Corp.,* 204 N. Y. 543; *Hill* v. *Winson,* 118 Mass. 251.)

*Joseph J. Brophy, Desmond T. Barry* and *Edward A. Shandell* for respondent. I. Plaintiff offered no proof of any violation of law or custom or usage requiring barred windows. The only

evidence adduced on such issue was to the contrary, hence the trial court's submission of the case to the jury on such theory was error and the Appellate Division reversal on such point was proper. (*Sieniewicz* v. *Merusad Realty Corp.*, 291 N. Y. 806.) II. The accident was a remote and unforeseeable consequence for which liability does not attach. (*Halverson* v. *562 W. 149th St. Corp.*, 290 N. Y. 40; *Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127; *Galbraith* v. *Busch*, 267 N. Y. 230; *Massa* v. *Nippon Yusin Kaisha*, 264 N. Y. 283; *Sandler* v. *Garrison*, 249 N. Y. 236.)

LOUGHRAN, Ch. J. This is an action for wrongfully causing the death of the plaintiff's decedent who was killed when she fell out of a window of a labor room in the maternity division of the defendant's hospital. The decedent was in an advanced stage of labor at the time and was awaiting removal to a delivery room for the birth of her third child. The fatal fall was brought about by a mental derangement called intrapartum psychosis — a condition that is recognized by the medical profession as a hazard of childbirth, though the incidence of the disorder may not be high.

The decedent was alone in the labor room when her mind became disordered. " She must have been alone [said the executive director of the defendant hospital] or else they would have stopped her." A nurse who had been in sole charge of the labor room had gone to an adjoining nurses' station to answer calls on a telephone there, as she had been directed to do. While she was so engaged in the nurses' station, the interior of the labor room was out of her sight. Consequently the disappearance of the decedent from that room went unwitnessed.

On the trial herein, the court said to the jury: " It is charged [by the plaintiff] that the defendant was negligent in failing to provide guardrails or locks on the windows in the labor room to prevent temporarily deranged patients from going through the windows. It is also charged [by the plaintiff] that the failure of the defendant to provide constant supervision or uninterrupted attendance of the patient in the labor room was negligence; that the absence of the nurse from the labor room for whatever time you find she was absent therefrom, and the consequent leaving of the patient in the labor room unattended, was negligence."

At the close of the trial court's charge to the jury counsel for

the defendant said: " I have only one exception, and that is, I respectfully except to that portion of your Honor's charge which left it to the jury to decide whether the hospital may be negligent for failure to provide bars on the windows. And so that it will properly follow, I respectfully ask your Honor to charge the jury to disregard the lack of bars on the windows as any evidence of negligence on the part of the defendant hospital or as having any bearing whatsoever on the issues." The trial court declined to alter its charge in the fashion so requested and the defendant's counsel then noted another exception. Verdict and judgment for the plaintiff followed.

The Appellate Division, however, reversed on the law and ordered a new trial on the ground that the defendant's exceptions were validly taken. From that reversal, the plaintiff has appealed to this court on a stipulation for judgment absolute.

The defendant's exceptions, we think, present no error of law. The trial court did not tell the jury that the absence of safeguards from the windows of the labor room was in itself and without more enough to warrant a verdict against the defendant. On the contrary, the court posed this ultimate question to the jury: " Do you, on all of the evidence in the case, find that the defendant failed to use reasonable care to avoid injury to the plaintiff's intestate? "

Thus there was left to the jury the question whether the defendant hospital was negligent when in the decedent's exigency it withdrew from her all personal care without securing the window through which she then and there helplessly fell to her death. This submission of the issue was right, in our judgment.

The order of the Appellate Division should be reversed and the judgment of Trial Term affirmed, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). Decedent, having had two previous normal pregnancies, was, without any abnormal symptoms, awaiting delivery of her third child in a labor room in defendant's Brooklyn hospital, under the direction of her own physician and with a nurse employed by defendant in attendance only a few feet away, when decedent, apparently in the throes of a sudden and entirely unanticipated psychosis, threw open the window of the labor room, unhooked the window screen and jumped or fell to her death. The jury has been allowed by its

verdict to say that the cause of this tragic occurrence was the failure of the hospital to have locks or barriers on the window so as to make egress impossible, and/or the failure of the hospital to provide what is referred to as constant and uninterrupted attendance on, and supervision of, the patient.

There was absolutely nothing in the history, condition or demeanor of Mrs. Flanagan to suggest that she was about to go insane or to attempt suicide, and the malady of " intrapartum psychosis ", with which, it is said, she was suddenly attacked, is so exceedingly rare that three Brooklyn obstetricians, in their combined experience of over 300,000 births, had never seen a case thereof, in any of the ten Brooklyn hospitals wherein they attended. At defendant hospital, where more than 25,000 babies had been delivered over a period of years this was the first case of intrapartum psychosis.

There was no proof whatever of any custom or requirement that such labor rooms in hospitals keep their windows barred or locked, and the three obstetricians above referred to all testified that there were no such protections on any such rooms in any of the thirteen large Brooklyn hospitals (defendant's hospital would make a fourteenth) with which they were familiar. As to constant or uninterrupted attendance or supervision, it is undisputed that decedent was the only patient in the labor room, that on the orders of her own physician she was walking about the room, that there was a qualified nurse assigned to the labor room, and that the leap through the window came when the nurse was momentarily in a small adjoining " nurses' station ", answering the telephone, a few (perhaps fifteen) feet away from the patient. Decedent's physician, who was at the hospital at the time awaiting this birth, testified that such nursing attendance was adequate, and that it was entirely proper for the nurse to answer the telephone. It is undisputed that the nurse, although an employee of defendant, was bound to, and did, obey all the orders of decedent's physician. That physician, as well as a nursing expert called by plaintiff, testified that it is adequate nursing attendance to a woman in labor, for the nurse to remain within calling distance, as this nurse did. Another obstetrician testified, for plaintiff, that, at several Manhattan hospitals which he visits, nursing attendance on patients in labor rooms is constant and uninterrupted; he ques-

tioned the wisdom of this decedent's physician in allowing her to be ambulatory, but admitted that the attending physician was in full control, and that the nurse had to do as that physician commanded.

I am unable to see how, on this proof, a finding of a breach of duty by this hospital can be sustained.

The judgment should be affirmed, and judgment absolute ordered against plaintiff, on her stipulation, with costs.

LEWIS, CONWAY, DYE and FROESSEL, JJ., concur with LOUGHRAN, Ch. J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Ordered accordingly. [See 301 N. Y. 684.]