THOMAS CADICAMO, as Administrator of the Estate of MARIA E. CADICAMO, Deceased, Appellant, v. LONG ISLAND COLLEGE HOSPITAL, Respondent.

Argued December 3, 1954; decided December 31, 1954.

*Benjamin H. Siff* and *Harold J. Levy* for appellant.   I. The act of the nurse in replacing an ordinary floor lamp that had been placed over a healthy, normal baby requiring no special medical attention or care, for the purpose of providing additional warmth, was an administrative act.   The hospital is liable for the nurse's negligence in that regard.   (*Roche* v. *St. John's Riverside Hosp.*, 96 Misc. 289, 176 App. Div. 885; *Lederman* v. *Boulevard Sanitarium*, 263 App. Div. 727, 287 N. Y. 852; *Volk* v. *City of New York*, 284 N. Y. 279; *Iacono* v. *New York Polyclinic Med. School & Hosp.*, 269 App. Div. 955, 296 N. Y. 502; *Bickford* v. *Peck Memorial Hosp.*, 266 App. Div. 875; *Phillips* v. *Buffalo Gen. Hosp.*, 239 N. Y. 188.)   II. The careless use of equipment which requires for its proper use no special skill or judgment but only ordinary lay common sense is administrative negligence even though the activity involved may have a medical goal.   (*Bickford* v. *Peck Memorial Hosp.*, 266 App. Div. 875; *Santos* v. *Unity Hosp.*, 301 N. Y. 153; *Sheehan* v. *North Country Community Hosp.*, 273 N. Y. 580; *Volk* v. *City of New York*, 284 N. Y. 279; *Howe* v. *Medical Arts Center Hosp.*, 287 N. Y. 698; *Peck* v. *Towns Hosp.*, 275 App. Div. 302; *Dillon* v. *Rockaway Beach Hosp. & Dispensary*, 284 N. Y. 176; *Iacono* v. *New York Polyclinic Med. School & Hosp.*, 296 N. Y. 502.)   III. There was administrative negligence by the hospital in assigning one student nurse to take care of fifteen children; in permitting a student nurse to use a dangerous method of warming the baby, and in the nurse's leaving the baby unattended for an unreason-

able length of time. (*Martindale* v. *State of New York,* 269 N. Y. 554; *Luke* v. *State of New York,* 253 App. Div. 783; *White* v. *Prospect Heights Hosp.,* 278 App. Div. 789; *Howe* v. *Medical Arts Center Hosp.,* 261 App. Div. 1088, 287 N. Y. 698; *Santos* v. *Unity Hosp.,* 301 N. Y. 153; *Petry* v. *Nassau Hosp.,* 267 App. Div. 996.) IV. The immunity rule is harsh, unjust and based on a public policy no longer obtaining. It should be abandoned. (*Schloendorff* v. *Society of N. Y. Hosp.,* 211 N. Y. 125; *President & Director of Georgetown Coll.* v. *Hughes,* 130 F. 2d 810; *Wendt* v. *Servite Fathers,* 332 Ill. App. 618; *O'Connor* v. *Boulder Assn.,* 105 Col. 259; *Vanderbilt Univ.* v. *Henderson,* 23 Tenn. App. 135; *Erie R. R. Co.* v. *Tompkins,* 304 U. S. 64; *Woods* v. *Lancet,* 303 N. Y. 349; *Bernardine* v. *City of New York,* 294 N. Y. 361; *Post* v. *Crown Heights Hosp.,* 173 Misc. 250; *Liubowsky* v. *State of New York,* 285 N. Y. 701; *Robison* v. *State of New York,* 292 N. Y. 631; *Kaplan* v. *State of New York,* 277 App. Div. 1065.)

*Harold Schaffner, Reginald V. Spell* and *Joseph L. Schilling* for respondent. I. The act of the nurse in applying a lamp to increase the body temperature of the infant was a professional act for which defendant is not liable. (*Schloendorff* v. *Society of N. Y. Hosp.,* 211 N. Y. 125; *Sutherland* v. *New York Polyclinic Med. School & Hosp.,* 273 App. Div. 29, 298 N. Y. 682; *Phillips* v. *Buffalo Gen. Hosp.,* 239 N. Y. 188; *Steinert* v. *Brunswick Home,* 172 Misc. 787; *Wisner* v. *Syracuse Memorial Hosp.,* 274 App. Div. 1087; *McGuinn* v. *Knickerbocker Hosp.,* 276 App. Div. 1079, 302 N. Y. 633; *Lee* v. *Glens Falls Hosp.,* 265 App. Div. 607, 291 N. Y. 526; *Bakal* v. *University Heights Sanitarium,* 277 App. Div. 572, 302 N. Y. 870.). II. The facts being uncontroverted, there was no question of fact to submit to the jury and the professional or administrative negligence was a question of law. III. There was no administrative negligence by the hospital in assigning one student nurse to the nursery, or by the nurse in her actions while assigned to the nursery. (*Bryant* v. *Presbyterian Hosp. in City of N. Y.,* 304 N. Y. 538.) IV. The immunity rule is a long-established one based upon a sound public policy and is neither harsh nor unjust. (*Schloendorff* v. *Society of N. Y. Hosp.,* 211 N. Y. 125; *Sheehan* v. *North Country Community Hosp.,* 273 N. Y. 163; *Phillips* v. *Buffalo Gen. Hosp.,* 239 N. Y. 188; *Sutherland* v. *New York Polyclinic Med. School & Hosp.,* 298 N. Y. 682.)

FROESSEL, J. Plaintiff's intestate, a baby less than one day old, was burned to death in her bassinet in the nursery ward of defendant's hospital under circumstances hereinafter related. Her father sues here, as administrator, for her conscious pain and suffering and for wrongful death.

The baby was born in the hospital at about 11:25 P.M. on February 21, 1948. The obstetrician gave no special instructions of any kind concerning her postnatal care. She was a normal baby in " excellent condition " and " excellent health ", and was therefore placed in the custody of the pediatrics department of the hospital for routine care, her mother also remaining in the hospital. At that time the nursery room, containing fifteen or sixteen infants, was in the care of a student nurse. At two o'clock the following morning, another student nurse, Miss Giminez, who had completed but half her training course, began her tour of duty and took charge of the nursery. She learned that the Cadicamo baby's temperature was below normal, and that the nurse preceding her had placed a lamp over the baby to give her warmth and thus attempt to raise her temperature to normal.

This procedure was said to be the usual practice, and the equipment provided by the hospital was the same as it had been for at least four years. Such equipment consisted of an ordinary floor lamp, having a flexible or " goose neck " arm at the end of which was a small metal reflector. An ordinary 100-watt naked and unguarded electric bulb was placed in the reflector. These lamps were used throughout the hospital in the general administrative offices. One was specially provided in each nursery, however, for use as a " heating lamp " for furnishing " additional heat " when required to raise the temperature of a newborn infant. To do this, the practice was to wrap the baby in its blanket and then place the lamp so that the bulb and reflector are within six inches of the blanket, facing the baby's feet. It is left there until temperature becomes normal, a period of time which varies with different babies.

Miss Giminez found the lamp over the baby at 2:00 A.M. and left it there until 4:00 A.M., when she picked up the child to feed and change her. Observing that the baby was still cold, she wrapped her in the blanket, returned her to her bassinet and again turned on the lamp, placing it about three inches from

the blanket at the baby's feet. She then went about her other duties until 6:30 A.M., when she "walked out of the nursery" into an adjoining room and cleaned bottles. Then, with the nurse from an adjacent nursery room, she took a cart containing said nursery bottles from the third floor, where the nurseries are, down to the basement. Upon their return to the third floor, at about 6:50 A.M., they smelled smoke and discovered that the baby's bassinet was enveloped in flames two feet high. After they had extinguished the fire, it was observed that the bedding had been almostly completely burned away. The infant was of course then dead and her body was charred by the flames, which had been so hot that the bulb in the lamp was melted and fused.

An assistant fire marshal in the New York City fire department, who investigated the fire, testified that in his opinion it was caused by the heat from the electric light bulb in the lamp igniting the blanket. He added that Miss Giminez told him she thought the movements of the baby brought its blanket into contact with the electric bulb. Defendant has not attempted to dispute this or any other evidence; no defense witnesses were offered at the trial. Indeed, in his motion to dismiss, defendant's counsel refers to the fire marshal's testimony "that the cause of he [sic] fire was the close proximity of the bulb to the blanket, and the explanation given was that maybe the baby in turning had disturbed or put the blanket closer to the bulb". Defendant relies upon the legal defense that the death was caused solely by the negligence of Miss Giminez, acting in her professional capacity as nurse. For such negligence, it argues, defendant would not be liable, under familiar authorities beginning with *Schloendorff* v. *Society of N. Y. Hosp.* (211 N. Y. 125).

The Trial Judge submitted to the jury as a question of fact, under "all the evidence", whether the act which caused the death was administrative or professional in nature. Subsequently, however, he set aside the verdict in plaintiff's favor, and directed a verdict for defendant upon the ground that the placing of the lamp in a negligent manner was a medical act for which the hospital could not be held liable. The Appellate Division affirmed, two Justices dissenting in separate memoranda.

In our opinion, both the trial court and the Appellate Division have overlooked facts and circumstances which the jury was

entitled to find. The distance between the lamp and the baby's feet would necessarily be affected by the baby's movements. There is evidence that Miss Giminez thought the movements of the baby brought the blanket into contact with the electric light bulb, and thus caused the fire. In any event, since it is common knowledge that babies are not immobile, the placing of an unguarded, naked 100-watt electric light bulb within three or six inches of an infant but a few hours old required active supervision.

Thus the jury might find that the furnishing of this type of lamp for use in such dangerous proximity to a helpless infant, who could not be expected to remain motionless, together with the withdrawal of supervision and attendance occasioned by the *absence* of the nurse on the *administrative* duty of returning feeding bottles to the basement, caused the fire and its fatal consequences.

It follows that this case is controlled by our decision in *Santos* v. *Unity Hosp.* (301 N. Y. 153) where a nurse in attendance in the labor room left, as required by her duties, to answer the telephone, fifteen feet away. During her brief absence, her patient was overcome by a mental derangement called intrapartum psychosis, which caused her to open the window and leap to her death. Such psychosis is extremely rare and had not been observed by the physicians testifying in over 300,000 cases; there had previously been no case thereof in over 25,000 births at defendant's hospital. Nevertheless it was a recognized hazard of childbirth. The court there submitted to the jury, " on all of the evidence ", the question whether or not the defendant had been negligent in failing to provide bars on the windows of the labor room and in failing to provide " constant supervision or uninterrupted attendance of the patient ". We held, in the words of Chief Judge LOUGHRAN (p. 156): " Thus there was left to the jury the question whether the defendant hospital was negligent when in the decedent's exigency it withdrew from her all personal care without securing the window through which she then and there helplessly fell to her death. This submission of the issue was right, in our judgment."

Not only does this case fall within that principle, but the facts here shown are much stronger for plaintiff than were the facts in that case. They may be summarized thus:

(1) Mrs. Santos' intestate was an adult woman, apparently of sound mind and body, while decedent here was an utterly helpless newborn infant.

(2) The hazard there present was quite remote and indeed rare; here, the hazard presented by the proximity of a naked, unguarded electric light bulb in a metal reflector to a newborn infant wrapped in an inflammable blanket is plain to everyone.

(3) There, the nurse was absent for a very brief period of time, was not more than fifteen feet from her patient at any time, and had left her patient in no apparent danger; here, the nurse was absent from her nursery duties for twenty minutes, her administrative duties took her down to the basement, four floors away, and, as above noted, she left her patient in a position of obvious danger.

The jury was entitled to find here that the infant's movements brought her blanket into contact with the hot bulb and kept it there long enough to ignite the blanket, because there was no one present to prevent it by the careful supervision which we may assume Miss Giminez would have exercised had she not been about her duties in the basement. Neither was there a rescuer present in this darkened nursery room to observe the fire before it got well under way or to heed the child's screams of pain. Had such a person been present, it is safe to assume that the fire might not have occurred at all; it is almost certain that the holocaust described by the nurses would not have taken place and death could have been avoided.

In brief, defendant was aware of the settled practice to place the heating lamp within a few inches of the infant, yet it provided for this purpose an instrument without protective device or guard other than the constant supervision of the nurse. At the same time it assigned to her administrative duties which took her from her professional post and thus left the infant exposed to an obvious danger. We doubt whether at any time in the development of the law defendant could claim immunity as to an act with which it had thus interfered through the obtrusion of administrative functions into the professional area (see *Necolayff* v. *Genesee Hosp.*, 296 N. Y. 936, and *Iacono* v. *New York Polyclinic Med. School & Hosp.*, 296 N. Y. 502; *Ranelli* v. *Society of N. Y. Hosp.*, 295 N. Y. 850; *Dillon* v. *Rockaway Beach Hosp.*, 284 N. Y. 176; *Volk* v. *City of New York*, 284 N. Y. 279;

*Sheehan* v. *North Country Community Hosp.*, 273 N. Y. 163).
In any event, our decision in the *Santos* case (*supra*) clearly
settles the matter.

A word should be said as to the case of *Sutherland* v. *New
York Polyclinic Med. School & Hosp.* (298 N. Y. 682) which is
stressed in defendant's brief. There, we held that the decision
of a nurse not to remove a hot-water bottle, despite the com-
plaints of the patient, was a professional act for which the
hospital could not be held. The distinctions are quite substantial
between that case and this. They are very plain when we con-
sider that, here, Miss Giminez made only one professional deci-
sion: that, in accordance with the accepted practice, heat should
be applied to the infant until normal temperature should be
attained. This involved an unpredictable time element, varying
with each infant. When she attempted to carry out that profes-
sional decision and, *also,* at the same time, attended to her
*administrative* duties, she was compelled by the latter to leave
the child in a position of danger. If it be said that it was her
duty to turn off the lamp when she left for the basement, the
answer is that such a duty, or failure thereof, would not involve
a professional act, dictated by professional judgment, but would
constitute an act at odds with her previously exercised profes-
sional judgment, required solely for the benefit of defendant
hospital so that the administrative duties assigned to her might
be expedited.

Again, the *Santos* case (*supra*) is pertinent, for there the nurse
might have seen that the patient, who was ambulatory, remain
within sight while she answered the telephone, but she did not do
so. Her professional judgment was undoubtedly that the patient
should remain in the labor room, according to the usual prac-
tice, just as it was that of Miss Giminez that the infant should
have heat, according to usual practice. In both cases, it was
the administrative requirements of the hospital which took from
the patient the competent care and supervision to which she was
entitled and which constituted the additional factor that
generated a tragedy.

The judgment of the Appellate Division and that of the Trial
Term should be reversed, with costs in all courts, but, since it
appears that the findings of fact were not considered by the
Appellate Division, the case should be remitted to that court

for determination upon any questions of fact there raised (Civ. Prac. Act, § 606; *Loughran* v. *City of New York*, 298 N. Y. 320).

The judgment of the Appellate Division and that of the Trial Term should be reversed and the case remitted to the Appellate Division for determination of any questions of fact there raised, with costs to abide the event.

LEWIS, Ch. J., CONWAY, DESMOND, DYE, FULD and VAN VOORHIS, JJ., concur.

Judgments reversed, etc.