SIDNEY BERG et al., Respondents, *v.* NEW YORK SOCIETY FOR THE RELIEF OF THE RUPTURED AND CRIPPLED, Appellant, et al.. Defendants.

First Department, December 20, 1955.

*William F. McNulty* of counsel (*Glenney, Mathews & Hampton,* attorneys), for appellant.

*Benjamin H. Siff* of counsel (*John J. Tullman,* attorney), for respondents.

*Emanuel Hayt* of counsel for Hospital Association of New York State, *amicus curiæ.*

Botein, J.   This appeal poses the problem of accommodating the situation it presents to the flexural line of cases dealing with the negligence of hospital employees.

The female plaintiff was a patient in the defendant hospital. An admittedly qualified laboratory technician, employed by the hospital, made a serological test to determine the plaintiff's blood factor.  This test was made in contemplation of, and as an indicated preliminary to, a blood transfusion ordered for plaintiff by her physician.  The technician concededly made an error in designating plaintiff's blood factor, with the result that she was infused with blood of the wrong factor and suffered serious consequences.

After a trial without a jury judgment was entered for the plaintiff.  The trial court held that the negligence of the technician was an " administrative " rather than a " medical " act within the meaning that those terms have acquired in the context of fixing liability for injuries to hospital patients (see *Schloendorff* v. *Society of N. Y. Hosp.,* 211 N. Y. 125; *Phillips* v. *Buffalo Gen. Hosp.,* 239 N. Y. 188; *Santos* v. *Unity Hosp.,* 301 N. Y. 153, and *Cadicamo* v. *Long Island Coll. Hosp.,* 308 N. Y. 196).

The criterion is the nature of the alleged act of negligence, not the title of the person performing the act.  In *Phillips* v.

*Buffalo Gen. Hosp.* (*supra*) the placement of a hot water bottle by an orderly was held to be a medical act. (In this connection, see *Bakal* v. *University Heights Sanitarium,* 277 App. Div. 572, 575–576, affd. 302 N. Y. 870, and *Perlmutter* v. *Beth David Hosp.,* 308 N. Y. 100, 106.) In such perspective it is of no significance that the negligently performed act was, as the trial court here found, '' a simple chemical test ''. If it was immediately and integrally related to the medical care and treatment prescribed for the patient, then the act of negligence, no matter how simple or how far removed from the common concept of a professional act, was '' medical '' in nature and the hospital is immune from liability therefor (*Phillips* v. *Buffalo Gen. Hosp., supra; Sutherland* v. *New York Polyclinic Medical School & Hosp.,* 273 App. Div. 29, affd. 298 N. Y. 682; *Wisner* v. *Syracuse Memorial Hosp.,* 274 App. Div. 1087; *Steinert* v. *Brunswick Home,* 259 App. Div. 1018, motion for leave to appeal denied 260 App. Div. 810, 284 N. Y. 822; see, also, *Cadicamo* v. *Long Island Coll. Hosp., supra*).

The Trial Judge relied on *Mrachek* v. *Sunshine Biscuit* (283 App. Div. 105, affd. 308 N. Y. 116) which, however, is readily distinguishable. In that case the physician, who negligently inserted a needle in plaintiff's arm to extract a specimen of blood, was an employee of a business corporation. Plaintiff was not a patient. The physician was employed solely for the purpose of making required physical examinations, at the behest of the corporation, of applicants seeking jobs. Plaintiff was such an applicant. The Court of Appeals, in explaining the independent contractor theory upon which a hospital's immunity from liability for the torts of its physicians is based, stated (p. 120): '' At the heart of this rationale lies the thought that the hospital does not cure the patient; rather it procures a physician who, in rendering *treatment,* exercises his own judgment and discretion, undirected and uncontrolled by the hospital.'' (Italics the court's.) The court then went on to say (p. 122): '' We look to the ' medical '-' administrative ' distinction only when the negligence occurred during *treatment or care* of a patient, and where the physician acts *independently.* Here, where there was no treatment or care involved, where there was no doctor-patient relationship, where the physician did not act independently but merely ' obeyed an order given by his employer ', and where the physician's act ' was done solely for the purpose of furnishing to the employer in its business a report of the physical condition of the applicant ', the physician was a servant, not an independent contractor, and the employer is liable for his negligence.'' (Italics the court's.)

In this case, unlike the plaintiff in the *Mrachek* case, plaintiff was a patient in defendant hospital, being given treatment and care under direction of a doctor.

Of course, the realities of hospital procedure are not readily polarized into " medical " and " administrative " acts. It may be presumed that almost all acts which a hospital performs for its patients inevitably relate in some degree to the medical care and treatment of those patients. The determination of whether any one such act is " medical " or " administrative " often hinges on blending borderline considerations which, as may be supposed, invite delicate distinctions for the reconciliation of some of the decisions (e.g., compare *Volk* v. *City of New York*, 284 N. Y. 279, 284–285, with *Steinert* v. *Brunswick Home, supra*).

Such a highly refined line of distinction may suggest reappraisal of the underlying rationale, perhaps through legislative action. A reappraisal would necessarily have to reckon with the compelling arguments of the late Justice RUTLEDGE in *President & Directors of Georgetown Coll.* v. *Hughes* (130 F. 2d 810). He worded his challenge as follows (p. 812): " The cases are almost riotous with dissent. Reasons are even more varied than results. These are earmarks of law in flux. They indicate something wrong at the beginning or that something has become wrong since then. They also show that correction, though in process, is incomplete."

However, as we read the prevailing authorities in this State, the negligent act in this case bears a sufficiently direct and immediate relation to the care and treatment specified for the plaintiff by her own physician to require that the judgment below be reversed and the complaint dismissed.

BREITEL, J. P. (dissenting). I dissent and vote to affirm the judgment in favor of plaintiffs.

We do not know in this case whether the laboratory technician made the blood test negligently, or whether the blood test was properly made but the result erroneously reported by the technician or by some clerk. All that is known is that Mrs. Berg's blood was reported to be Rh positive. The evidence indicated that this was not a correct report. The consequential damages resulted from the transfusion of Rh positive blood and the ensuing pregnancy.

The Court of Appeals very recently summarized the law with respect to hospital liability for injury sustained as a result of acts, negligently performed, of its employees. While the case of *Mrachek* v. *Sunshine Biscuit* (308 N. Y. 116) is not relevant

on the facts, Judge FROESSEL, speaking for the unanimous court, definitively analyzed the principles applicable to hospital liability. Among those emphasized was that the hospital is liable "even where *in the course of treatment* a patient is injured through a negligent 'administrative' act, such as failing to erect sideboards after deciding they are necessary (*Ranelli* v. *Society of N. Y. Hosp., supra*), or giving a blood transfusion to the wrong patient (*Necolayff* v. *Genesee Hosp.*, 270 App. Div. 648, affd. 296 N. Y. 936) " (p. 121; emphasis in the original). Treatment in this case required a blood transfusion. True, the transfusion was to the right patient, but it was the wrong blood. Error resulted somehow from the blood test. The blood test was not the treatment itself. It was a precondition to a phase of treatment, prescribed by hospital practice and medical science, administered by hospital staff completely disassociated from the attending physician, and involving observation by a subprofessional technician with accurate clerical report. The act, therefore, was an administrative one negligently performed by hospital employees (occasioned in some way not disclosed by the only ones who had knowledge of the facts) and arising in the course of treatment of a patient. The blood test was designed neither to cure nor to mitigate the illness or pain of a patient. It involved preparation of the patient for eventual treatment.

In another recent case in the Court of Appeals, involving a blood transfusion by a hospital to a patient, the court again had occasion to refer to the principles applicable to hospital liability. In *Perlmutter* v. *Beth David Hosp.* (308 N. Y. 100), argued and decided at the same time as the *Mrachek* case, the court struck down a pleading which based liability upon a breach of warranty in the sale of blood for a transfusion. The case, on its facts, therefore, comes very close to the problem here. The difference is that in the *Perlmutter* case only the pleading was involved, and, of course, the pleading sounded in contract. Most significantly, however, Judge FULD, speaking for the majority of the court, noted that dismissal of the complaint " leaves untouched the question of defendant's liability for negligence, if any " (p. 108).

Certainly, if, in the *Perlmutter* case, a defect in the blood itself, given in transfusion, is still an open question for basing hospital liability, then there is no warrant, in this ever-narrowing field of hospital immunity, to preclude hospital liability for a negligently administered or negligently reported blood test: (1) performed by hospital employees of subprofessional status, (2) in a laboratory maintained exclusively under the supervision of the hospital,

and (3) over which the attending physician had neither direction nor responsibility.

Moreover, if the attending physician had procured an outside laboratory to make the blood test, none would question the liability of the laboratory for negligent performance of its work. The fact that a hospital chose or required that its own laboratory perform the service should not clothe negligent performance of that service with immunity.

To the injured plaintiffs it makes no difference from where or from whom the blood test and the erroneous report emanated. From the viewpoint of the hospital this was not an instance of facilities provided for the professional performance of his responsibility by the attending physician. This was an administrative failure by the hospital, following or preceding a medical prescription as was the placing of sideboards in the *Ranelli* case (269 App. Div. 906, affd. 295 N. Y. 850, *supra*) or the giving of the right blood to the wrong patient in the *Necolayff* case (*supra*).

The judgment should be affirmed.

BASTOW and RABIN, JJ., concur with BOTEIN, J.; BREITEL, J. P., dissents and votes to affirm in opinion.

Judgment reversed and the complaint dismissed. Settle order on notice.