ALBERT RAWDIN, as Administrator of the Estate of PAULINE RAWDIN, Deceased, Respondent, v. LONG ISLAND HOME, LTD., Appellant.— In a wrongful death action to recover damages arising out of the alleged negligence of the defendant hospital in failing to prevent the suicide of plaintiff's wife, the defendant appeals from a judgment of the Supreme Court, Nassau County, entered December 20, 1963, after trial, upon a jury's verdict of $65,000 in the plaintiff's favor. Judgment reversed on the law and the facts, without costs, and complaint dismissed, without costs. Defendant hospital, to which the decedent was admitted on Sunday evening, January 4, 1959, specializes in the treatment of the mentally ill. On the morning of January 7, 1959 the decedent committed suicide by hanging herself from a clothes pole in a closet of a room she shared with another patient; she used her scarf as a rope. The jury could have found that the suicide occurred during a 15-minute period when the decedent was unobserved by the defendant's employees. Decedent was depressed, anxious, moody and confused. There was some evidence of auditory hallucinations; there was no indication of suicidal tendencies. Decedent had once agreed with her husband that it would be better if he took from her a paring knife with which she was peeling potatoes. Even plaintiff's expert concluded that her use of the phrase "only God can help me" was inconsistent with suicidal tendencies. Dr. Rolo,

the psychiatrist in charge of decedent, examined decedent on Monday morning, January 5, 1959. He tentatively (and later finally) diagnosed her as a schizophrenic. Plaintiff seeks to make capital of so much of the initial and tentative diagnosis of Dr. Rolo, set forth in the hospital record, as reads: "We feel that we are dealing here with a probable schizophrenic affective disorder". In our opinion, the proof warrants only the inference that the term "affective disorder" is one which is loose, inaccurate and vague; one which might properly be applied to different kinds of mental patients, especially in the light of defendant's practices. Decedent was not assigned as a patient with suicidal tendencies; but, in accordance with the usual practice as to patients upon admission, she was assigned to a cottage used by other patients. Patients are encouraged to mingle with other patients; they are discouraged from isolating themselves; and constant spying on them is deemed to be anti-therapeutic. Nor do we perceive any negligence on the part of the defendant in failing to discover and to inspect writings of the decedent which she kept in a drawer for the two and one-half days between her admission and suicide; at most, such writings indicated possible suicidal tendencies only. We can discern nothing of substance in this entire record upon which to base a finding of actionable negligence on the defendant's part. Hence, we must reverse the judgment and dismiss the complaint. Ughetta, Acting P. J., Brennan and Hill, JJ., concur.; Kleinfeld and Hopkins, JJ., dissent and vote to affirm the judgment, with the following memorandum: In our opinion, the record discloses evidence of notice to the defendant hospital of decedent's suicidal tendencies at the time of her admission. Upon the decedent's admission, her illness was noted to consist of a "schizophrenic affective disorder with depression and anxiety;" and the decedent, pursuant to the defendant's rules, which conformed to the general rules of other Nassau County private hospitals, was placed under "Observation A" which required that the patient "be within sight of an Attendant at all times." The medical expert called by the plaintiff testified: (1) that he would have considered decedent to be a potential suicide; (2) that, under customary hospital practice, she would have been placed under constant daytime attendance; and (3) that such articles as belts or ties would have been removed from the patient's possession. The medical experts on both sides testified that suicidal tendencies were exhibited in unmailed letters, written by the decedent and found in her room at the defendant's institution after her suicide. While the defendant's supervising doctor denied that he had seen such letters prior to the suicide, his own notes in the defendant's record contain the significant observation that the decedent had been writing letters without mailing them, as well as the doctor's remarks upon the contents of such letters. There is testimony in the record that the suicide rate is relatively high in patients with schizophrenic affective disorders, particularly when accompanied by depression and anxiety. The suicide occurred at 10:30 A.M., on January 7, 1959 — within three days of her admission. The decedent hanged herself with her rayon kerchief which she had been permitted to retain after her admission. Under all the circumstances, it was clearly the defendant's duty to exercise reasonable care to prevent decedent from self-injury (*Gries* v. *Long Is. Home,* 274 App. Div. 938; *Murray* v. *St. Mary's Hosp.,* 280 App. Div. 803; *Santos* v. *Unity Hosp.,* 301 N. Y. 153). In our opinion, the record amply supports the jury's verdict and the judgment should be affirmed.