■ CARLOS TORRES, JR., Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendant, and BEEKMAN DOWNTOWN HOSPITAL, Respondent.—In a negligence action to recover damages for personal injuries, the defendants City of New York, New York City Health and Hospitals Corporation and Kings County Medical Center appeal, as limited by their brief, from so much of a judgment of the Supreme Court, Kings County, entered July 9, 1976, after a jury trial, as is in favor of the plaintiff and against them in the sum of $300,000 and as failed to award them judgment on their cross claim against defendant Beekman Downtown Hospital. Judgment affirmed insofar as appealed from, with one bill of costs payable by appellants jointly to respondents Torres and Beekman Downtown Hospital. Our review of the record discloses that at the time the plaintiff entered the Beekman Downtown Hospital, there was no legal ground upon which the nurse or the hospital could have restrained him. There was no evidence introduced which would cast any question of liability as to Beekman, either by the plaintiff or the City of New York. No testimony was adduced which established any deviation from good medical practice which deviation was the proximate cause of injury to the plaintiff. Without such testimony, there is no prima facie case. We do not find the sum awarded as damages so excessive as to shock the conscience (see *Rice v Ninacs,* 34 AD2d 388). Rabin, Titone and Suozzi, JJ., concur; Diamiani, J., dissents and votes to

modify the judgment by adding thereto a provision directing a trial as between the appellants and defendant Beekman Downtown Hospital pursuant to CPLR 1403 on their claim for contribution, with an opinion, in which Cohalan, J. P., concurs. In my opinion, there was sufficient proof of negligence on the part of defendant Beekman Downtown Hospital to present a prima facie case to the jury. Despite some conflict in the testimony, there was sufficient evidence to support the following version of the facts: On December 4, 1970 plaintiff, Carlos Torres, Jr., escaped from G-41 ward of Kings County Hospital, a ward for mental patients. He had been confined there for several days, having been diagnosed as suffering from a psychosis induced by a combination of alcohol, marijuana and either cocaine or heroin. After his escape Torres boarded a subway train and travelled to the Wall Street station. He alit, started to feel sick, walked over to a police officer (later identified as Officer Morrill) and told him that he had escaped from the G Building at Kings County, where he was being treated for syphilis. He also complained of stomach cramps. Although it was a very cold December day, Torres was wearing khaki pants, a white T-shirt and socks, but no shoes. He agreed to go to Beekman Downtown Hospital, and Officer Morrill hailed a passing police car to take him there. Upon arrival, they went into the emergency room, which was not busy at the time, and Officer Morrill spoke to Nurse Triano, who was in charge. He testified as to his conversation with her: "I had stated to Miss Triano that Mr. Torres had stated that he was treated in the Kings County in G Building for venereal disease and was released and that I had a feeling he may have been an escaped psycho from Kings County and that I was going to attempt to verify whether he was in fact an escapee from the G Building at KCH." Officer Morrill went to make some telephone calls in order to determine whether Torres had indeed escaped from Kings County. In the meantime, after an initial examination for vital signs, Torres was left alone in the emergency room. The hospital records indicate that he was there from 9:41 to 9:55 A.M.; he testified that he walked out at that time because he "felt" that the "nurses and policemen" were talking about him. After Torres left the emergency room he walked home, changed his clothes, and walked to a subway station four blocks away, where he jumped in front of a subway train. His right leg was crushed, necessitating its amputation below the knee. The crucial question is whether there was anything which Beekman could or should have done to prevent this occurrence. Stated more precisely, was there sufficient evidence from which the jury could have found that Beekman was negligent and, if so, did its negligence contribute to plaintiff's injury. On a motion to dismiss the nonmoving party must be given the benefit of every inference in its favor (*Osipoff v City of New York,* 286 NY 422, 425). Thus Officer Morrill's testimony that he notified Nurse Triano of his suspicions that Torres was an escaped psychotic assumes particular significance, especially in view of the fact that Nurse Triano had no recollection of the incident independent of the hospital records. Concededly, those records merely contain a notation that the patient was complaining of discharge from the penis and of pain in the back and the throat. However, Nurse Triano admitted that *under circumstances such as those testified to by Officer Morrill,* Torres should not have been left alone, but should have been kept under constant surveillance. Hospital procedure would have required that the policeman be asked to guard the patient until he was seen by a doctor "and until such time as we could [make] proper arrangements for transfer and have him accepted into another hospital with a psychiatric facility." She further testified that, as the nurse in charge of the emergency

room, she should have directed someone to make telephone inquiries as to whether a patient had left another institution while the police officer guarded the patient. Thus, although the hospital had no legal right to detain the plaintiff, who appeared to be acting rationally, the jury could have found that in the exercise of reasonable care, Nurse Triano should have made an effort to detain or reassure him, *at least* until Officer Morrill had completed his telephone inquiries as to plaintiff's status at Kings County Hospital. Even a remote possibility of harm to a patient might be enough to pose an issue to the jury as to whether the hospital used "reasonable care and diligence not only in treating but in safeguarding a patient, measured by the capacity of the patient to provide for his own safety" *(Robertson v Towns Hosp.,* 178 App Div 285, 287). Thus, in *Santos v Unity Hosp.* (301 NY 153), it was alleged that defendant had been negligent in withdrawing supervision of a maternity patient who became mentally deranged with "intrapartum psychosis" and fell to her death out of an unsecured window in the labor room. The patient had undergone two previous normal pregnancies and did not exhibit any abnormal symptoms. Chief Judge Loughran, writing for the majority, held that the trial court had properly refused to charge that the absence of safeguards on the windows was enough to warrant a verdict against the hospital and that (p 156) the trial court had been correct in posing the "ultimate question to the jury: 'Do you on all the evidence in the case, find that the defendant failed to use reasonable care to avoid injury to the plaintiff's intestate?' "The Court of Appeals so held despite a strong dissenting opinion, which stated in part (301 NY 153, 157, *supra):* "There was absolutely nothing in the history, condition or demeanor of Mrs. Flanagan to suggest that she was about to go insane or attempt suicide, and the malady of 'intrapartum psychosis', with which, it is said, she was suddenly attacked, is so exceedingly rare that three Brooklyn obstetricians, in their combined experience of over 300,000 births, had never seen a case thereof, in any of the ten Brooklyn hospitals wherein they attended. At defendant hospital, where more than 25,000 babies had been delivered over a period of years this was the first case of intrapartum psychosis." More recently, in the case of a patient who was admitted to the hospital suffering from a "fever of undetermined origin", and who was placed under mild restraints, but later suffered injuries when he fell or jumped from a second story window, the court upheld the submission of the issue of negligence to the jury, and stated: "The question then is what reasonable care was required in the way of supervision, considering the nature of the hospital and its facilities, the personnel available either by way of staff, private duty nurses or relatives, and the knowledge the hospital had of the patient's propensities to inflict injury upon himself (and even though, as defendant contends, the patient's conduct may not have been suicidal [see *Van Patter v Towns Hosp.,* 246 NY 646; *Robertson v Towns Hosp.,* 178 App Div 285, *supra;* Ann. 60 ALR3d 880, *supra,* § 11 subds (a), (b)]). Competent proof of the general standards of hospital care common in the community under these circumstances was properly received as evidence of defendant's negligence *(Hnat v Nyack Hosp.,* 33 NY2d 985; *Judd v Park Ave. Hosp.,* 37 Misc 2d 614, affd 18 AD2d 766; *Liebrecht v Gotham Sanitarium,* 284 App Div 781; Ann 36 ALR3d 440, Hospital-Care Standard-Locality Rule)." *(Horton v Niagara Falls Mem. Med. Center,* 51 AD2d 152, 155.) Here, the hospital records indicate that plaintiff was brought into the hospital in a police car, and that he was "clocked in" at the admitting desk at 9:41. He was bizarrely dressed. Officer Morrill's testimony was to the effect that he advised the supervising nurse of his

suspicion that plaintiff was an escapee from the mental ward of Kings County Hospital. Plaintiff's physical complaints were noted in the hospital record, yet there is no indication that he was ever seen by a doctor. The hospital records also show that he left the emergency room at 9:55 (14 minutes after admission). The emergency room was fairly quiet, "not that busy at all", and adequate security personnel were present. Nurse Triano's testimony confirmed that Beekman's procedure required that Torres should not have been left alone under the circumstances described above. Thus, there was adequate evidence from which a jury could conclude that the hospital violated its duty to safeguard this patient. I therefore am of the view that there should be a new trial as between appellants and the Beekman Downtown Hospital as to the appellants' claim for contribution pursuant to CPLR 1403. The appellants have expressly sought such relief rather than a new trial of the plaintiff's claim against Beekman (cf. *Stein v Whitehead,* 40 AD2d 89).