MISSOURI PACIFIC RAILROAD COMPANY *v.* HALL.

4-2679

Opinion delivered October 17, 1932.

*Thos. B. Pryor* and *Daggett & Daggett,* for appellant.
*Giles Dearing,* for appellee.

HUMPHREYS, J. Appellees, husband and wife, recovered judgment for damages in the total sum of $905 in the circuit court of Cross County against appellant on account of an injury received by the wife, causing her to miscarry, through the alleged negligence of appellant, from which is this appeal.

A reversal of the judgment is sought upon the alleged ground that there is no substantial evidence in the record to support it. The argument is made that the evidence wholly fails to show that the injury received was the proximate cause of the miscarriage.

Appellees purchased tickets at Fairoaks, Arkansas, for transportation to Wynne, Arkansas. According to the testimony introduced by them, they boarded appellant's train at eleven o'clock A. M., and about the time the wife reached a seat, and before she had time to sit down, the train started with a jerk, which caused her to fall and strike her side against the arm of the seat; that she was pregnant and had been for three months; that the lick in her side produced great pain in her stomach, causing nausea and a hemorrhage from the genital organs; that, upon arrival at Wynne, she repaired to Stewart's Drug Store, where she had additional hemorrhages, causing her to suffer great physical and mental pain, and to become faint; that, after receiving medical attention, she was carried in a taxi to the home of a friend, where she remained for four hours in bed and in a semi-conscious condition, and then was carried to the home of her sister, where she continued to have hemorrhages and suffer until about five o'clock the next morning, at which time she miscarried; that, after being delivered of the fetus, she continued to suffer and was confined to her bed for ten days or more.

Dr. Stewart testified, in response to a hypothetical question, that, in his opinion, the miscarriage might have resulted from the injury.

Dr. Wilson testified on behalf of appellant, in response to a hypothetical question, that in his opinion the miscarriage did not result from the injury, because the injury was not inflicted on the uterus, and because sufficient time had not elapsed between the time of the injury and the delivery of the fetus for the injury to have been the proximate cause of the miscarriage.

The testimony detailed above justified the court in submitting to the jury the issue of whether the injury was the proximate cause of the miscarriage. Courts are not required to accept opinions of expert witnesses as absolutely true, and peremptorily instruct verdicts based upon their opinion regardless of all other facts and circumstances in the case tending to conflict with such opinion. Expert witnesses themselves frequently differ in conclusions and opinions in response to identical hypothetical questions; hence their opinions do not rise to the level of physical facts.

In the instant case, the testimony of the lay-witnesses tends to show that the injury was the direct cause of the miscarriage, and is supported to some extent by the testimony of Dr. Stewart.

The testimony of Dr. Wilson, appellant's expert witness, tends to show that the injury was not the proximate cause of the miscarriage.

This produced a conflict in the testimony for determination by the jury and not the court. The peremptory instruction therefore requested by appellant was properly refused.

Appellant also urges that the amount of recovery is excessive and the result of passion and prejudice. We cannot agree with learned counsel in this contention. The wife was entitled to recover for mental anguish as well as physical pain and suffering. According to the evidence adduced by appellees, she began to suffer acute and severe pain coincident with the injury, which continued in its intensity until four or five o'clock the following morning, at which time she miscarried. Her suffering was so great that she had fainting spells, and at times became

unconscious. She continued to suffer physically thereafter for ten days or more. When these facts are considered in connection with the mental anguish a woman must necessarily suffer in having a miscarriage instead of a child born alive, we cannot say that a verdict for $905 is the result of passion and prejudice.

No error appearing, the judgment is affirmed.