RICHARD L. GILMAN, individually and as administrator, *vs.* METROPOLITAN TRANSIT AUTHORITY.

Suffolk.     November 9, 1962. — December 4, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Practice, Civil,* New trial; Error: whether error harmful. *Damages,* For tort. *Evidence,* Of nervous symptoms; Opinion: expert; Relevancy and materiality. *Error,* Whether error harmful.

There was no abuse of discretion in the denial of a motion for a new trial of an action on the ground that excessive damages were awarded for injuries sustained in a collision of vehicles by a pregnant woman who was delivered of a stillborn child by a Caesarean operation shortly after the accident.     [204]

In an action for injuries sustained in a collision of vehicles by a pregnant woman who was delivered of a stillborn child by a Caesarean operation shortly after the accident and whose obstetrician and operating physician were available but not called at the trial, there was no abuse of discretion in the denial of a motion by the defendant for a new trial on the ground of newly discovered evidence consisting of affidavits of such physicians stating that the woman had not mentioned the accident to

Gilman *v.* Metropolitan Transit Authority.

them prior to the day of the operation and that in their opinion the accident was not causally related to the stillbirth. [204–205]

At the trial of an action to recover for injuries sustained in a collision of vehicles by a pregnant woman who was delivered of a stillborn child by a Caesarean operation shortly after the accident, testimony from one not a physician as to moaning, crying, weeping and incoherent talk by the woman after the operation was properly admitted. [205]

At the trial of an action to recover for injuries sustained in a collision of vehicles by a pregnant woman who was delivered of a stillborn child by a Caesarean operation shortly after the accident, error in excluding a question by the defendant to its expert physician as to what symptoms generally follow a separation of the placenta was not prejudicial on the record. [205–206]

At the trial of an action for personal injuries necessitating an operation, there was no error in permitting the plaintiff to elicit from the defendant's expert physician what would be fair charges for the operation and for an anesthetist. [206]

Damages in an action for personal injuries sustained in a collision of vehicles by a pregnant woman who was delivered of a stillborn child by a Caesarean operation shortly after the accident might properly include "a fair assessment for" causally related nervousness and hysteria following the operation. [207]

TORT. Writ in the Municipal Court of the City of Boston dated June 16, 1958.

Upon removal to the Superior Court the action was tried before *Swift, J.*

*Charles S. Walkup, Jr.,* for the defendant.

*Edward J. Barshak* for the plaintiffs.

WHITTEMORE, J. These, so far as argued by the defendant, are the defendant's exceptions to the denial of motions for a new trial of an action of tort for injuries to Janice Gilman and the consequential damages of her husband, Richard, and to evidential rulings as well as to a portion of the charge. Janice died July 1, 1961, after suit was brought, and her husband as administrator was substituted as a plaintiff.

There was evidence as follows: On Friday, February 14, 1958, Janice and Richard were passengers on a trackless trolley when it was hit by another trackless trolley which was making the turn from Huron Avenue into Concord Avenue in Cambridge; Janice was then seven and one-half months pregnant in her first pregnancy; the impact pushed

the first trolley somewhat to the right, pushed Richard somewhat forward in his seat and doubled him up at the waist, and pushed Janice forward and jackknifed her upper body; on leaving the car Janice made "some sort of a complaint" to the driver of the trolley about the conduct of the other vehicle but made no complaint that she had been hurt; that evening Janice was nervous and upset and felt shaken up internally; she suffered pains on Saturday and Sunday and there was bleeding Sunday so that a physician (not her attending physician who was unavailable) sent her to the hospital where he performed a Caesarean operation and removed a dead fetus. Janice was incapacitated for about three months. A qualified physician who had not attended Janice testified, in response to hypothetical questions, that the accident was the probable cause of the loss of the child.

1. No error of law is shown in the denial of the motions for a new trial. We cannot rule that the verdicts of $20,000 for the injuries to Janice and $1,469 for consequential damages were so excessive as to control the discretion of the judge. The second motion averred newly discovered evidence and was supported by the affidavit of the physician who attended Janice before and after February 16, 1958, and the affidavit of the physician who performed the operation on that date. Each affidavit negatived any mention by Janice to either doctor of the accident or of any complaints prior to the morning of February 16, 1958, and set out the physician's opinion that the accident as described was not causally related to the rupture of the placenta and the ensuing stillbirth.

The evidence shown by the affidavits was not unavailable to the defendant at the trial as the defendant recognizes. It is not a ground for requiring a second chance to defend that, as the defendant asserts, the plaintiff "might well be expected" to produce these witnesses. We are not presented with a case where the defendant, claiming surprise, was refused opportunity during the trial to summon witnesses whom it had expected to be on hand. The absence of both attending physicians was sufficiently unusual to sug-

Gilman *v.* Metropolitan Transit Authority.

gest to the defendant at the trial what it now asserts was apparent upon receipt of the affidavits, that is, a possible reason why the plaintiff did not produce the witnesses, and hence the value of their testimony to the defendant. Whether the plaintiff's failure to call the attending doctors was a reason to grant a new trial was a question for the trial judge who had observed the course of the trial and could appropriately inquire into all the circumstances.

2.   There was no prejudicial error in the evidential rulings.

(a) It was within the judge's discretion to allow Richard's brother to testify that about a month after Janice left the hospital he observed her moaning, crying, and weeping and that perhaps two months after she left the hospital, Janice suddenly started crying and talking incoherently. Richard had already testified without objection that "during the month she was at home [after hospitalization] she had hysterical spells when she would start screaming and crying." Richard had also testified that up to the time of the accident Janice was not a nervous person or easily upset.   The brother had testified that before the accident Janice was a happy, calm, and easy-going person.

The brother's evidence was in substantial part cumulative.   Expert testimony was not required that nervous symptoms sometimes follow forcible interruption of pregnancy and loss of the expected child or to relate such symptoms to the accident.   *Lovely's Case,* 336 Mass. 512, 515–516, and cases cited.   There was no suggestion of possible other cause of these symptoms.

(b) The ruling that an expert might not be asked in a general way what symptoms follow a separation of the placenta "unless it applies to this particular case"[1] unneces-

---

[1] "Q.   When the placenta is separated, from whatever cause it may be, what is the first symptom that appears? COUNSEL FOR THE PLAINTIFF: You mean in this case, . . . COUNSEL FOR THE DEFENDANT: No. In general. A.   There are two types of separation of the placenta, and in one type there will be external bleeding. THE COURT: I think you ought to be confined to this particular case because all his testimony so far, he is relying on the record. COUNSEL FOR THE DEFENDANT: Well, that's true. THE COURT: Well, I think, then, his answer ought to be: What does the record indicate? COUNSEL FOR

sarily hampered counsel.  We see no reason for not allowing the physician to make the general statement which was sought and to proceed from that to the particular case. But we discern no prejudice requiring reversal.  We do not know what the physician would have said, but, assuming his generality would have led to relevant testimony, we do not think the judge's ruling excluded anything relevant.  Counsel was not precluded from eliciting the expert's opinion that an expected or necessary step from cause to claimed effect was lacking, or that a reported symptom was inconsistent with the claimed causal relationship.  If, in order to make such points clear, it was important to refer to the different symptoms of the two types of separation, we think the necessary reference could have been developed in the course of the examination without infringing upon the preliminary ruling.

(c) It was not error to permit the plaintiff to elicit from the defendant's expert witness what would be a fair charge for the operation.[2]  It is not objected that the witness's experience did not qualify him to state the range of fair charges.  The witness could also be permitted to testify that a fair charge for an anesthetist was between $35 and $45.

(d) We see nothing prejudicial to the defendant, or indeed helpful to the plaintiff, in allowing the operator of the trackless trolley in which the alleged accident occurred (who had testified that he knew nothing of the accident) to testify that in September, 1958, when he was first asked about the accident he was not told by M. T. A. personnel that they had had a "claim on this accident" as early as March. Similarly inconsequential in our view was the testimony of

---

THE DEFENDANT: Well, I am not sure that I follow your Honor.  The record indicates what, if your Honor please?  THE COURT: The answer to your question.  COUNSEL FOR THE DEFENDANT: Well, I think I have the right to ask him as an expert, if your Honor please.  THE COURT: Ask him what?  COUNSEL FOR THE DEFENDANT: I have a right to ask him in general what a separation of a placenta means by way of symptoms to the person suffering it.  THE COURT: Not unless it applies to this particular case."

[2] "It's very difficult because there are different fees.  Blue Shield would allow $150 . . . .  The doctor might charge $200 or $250 or perhaps more. . . . Well, $250 could be fair."

the operator of the other trolley that, after the accident had been called to his attention in September, he did not make inquiry of passengers.

3.   There is nothing in the exception to the charge that the jury "should make a fair assessment for the pain and suffering, including mental suffering," and that if they found that "Mrs. Gilman on occasion became nervous or hysterical as a probable result . . . [they] should include a fair assessment for that . . .."   See point 2 (a) *supra.*

*Exceptions overruled.*