OCCHIPINTI *v.* RHEEM MANUFACTURING COMPANY, INC.

No. 43361          February 15, 1965          172 So. 2d 186

*Jason H. Floyd,* Gulfport, for appellant.

*Morse & Morse,* Gulfport, for appellee.

ETHRIDGE, J.

Mrs. Roy Occhipinti, appellant, obtained in the Circuit Court of Harrison County a judgment (based on a jury verdict) of $1,500, against Rheem Manufacturing Company, Inc., appellee. Rheem does not complain, but Mrs. Occhipinti in this appeal contends that the verdict is so grossly inadequate as to evince bias, passion and prejudice by the jury; and that the trial court erred in granting defendant an instruction which prohibited the jury from considering the death of her unborn child as it affects her damages. We hold she is entitled to a new trial on the issue of damages. The question of Rheem's liability to appellant was settled by the jury.

I.

Plaintiff was injured around 3:00 p.m. on November 22, 1960, when the automobile she was driving collided with the left rear wheel of the tractor-trailer owned by Rheem and driven by Scipio Clay. U. S. Highway 90 runs east and west in the City of Pass Christian. It has two lanes for westbound traffic, totaling 25 feet in width, and two lanes for eastbound traffic, 25 feet in width. They are separated by an 18-foot neutral ground. Rheem's tractor-trailer was 50 feet, 2 inches in length. Clay drove it into a service station on the north side of the highway, and after purchasing gas, moved the truck near the north edge of the westbound lane. He intended to cross that lane in a southerly direction, and turn east in the southern or eastbound lane. Both directions had considerable traffic.

Mrs. Occhipinti was driving west in the left lane with her twelve-year-old son in the front seat, a younger child

and a dog in the back seat, at 45 to 50 miles per hour, within the speed limit. Plaintiff saw the truck pulling up to the north side of the highway, when she was about 300 feet east of it, blew her horn, and the truck stopped. When she got within about 150 feet, Clay drove his long vehicle out across the westbound lane, and his tractor was jutting at least 6 to 8 feet over into the eastbound lane, blocking at least one lane of that traffic. Plaintiff slammed on her brakes, turned to the right, and hit the left rear wheel of the trailer, around the middle of the westbound lane. The evidence was in conflict as to whether there was enough room for a car to pass on the right of the trailer. Clay said that he stopped when he saw a truck coming east, and it turned into the service station. Since he was crossing the westbound and moving into the eastbound lane, he had to look both ways and check his instruments. He did not see plaintiff's automobile approaching, although there was nothing to block his view after the truck turned into the service station. He did not know it was approaching until he heard the skidding of tires, at which time he continued moving into the eastbound or southern lane trying to get out of the car's way, until the instant it crashed into the trailer. The evidence was ample to justify the jury in finding that defendant's driver was negligent, and that this was a proximate contributing cause to plaintiff's injuries.

The jury's verdict was that it found ''the plaintiff and the defendant equally guilty of negligence and awards damages of $1500 to the plaintiff.'' We treat those statements in the verdict other than the award of damages as surplusage. Poynter v. Trotter, 250 Miss. 812, 168 So. 2d 635 (Miss. 1964). Nevertheless, the record shows that the principal negligence causing plaintiff's injuries was that of Rheem's driver, Clay, in failing to yield the right-of-way to plaintiff; driving his long tractor-trailer into the path of an oncoming

vehicle when plaintiff had approached so closely as to constitute an immediate hazard, thus blocking a large portion of the westbound traffic; and in failing to keep a proper lookout. Defendant obtained a contributory negligence instruction, and asserts that plaintiff failed to keep her motor vehicle under proper control and to maintain an adequate lookout ahead. The undisputed evidence is that plaintiff was driving within the speed limit and was looking ahead. The great weight of the evidence reflects that defendant's truck suddenly lurched in the highway at a time when plaintiff's vehicle was too close to justify the truck's entry on the highway, particularly in view of its considerable length. At any rate, the jury verdict of liability is not in issue, and the judgment in that respect is affirmed. However, the fact that the principal negligence causing the collision was that of the defendant, and not of the plaintiff, is relevant on the amount of damages awarded her.

## II.

Mrs. Occhipinti at the time of the collision on November 22, 1960 was five and one-half months pregnant with child. The collision threw the electrically-controlled driver's seat into the steering wheel, and caused multiple bruises with hemorrhages beneath the skin over her abdomen. Her obstetrician, Dr. Frank G. Nix of New Orleans, had seen her on November 2, and her pregnancy was progressing normally. He next examined her on November 23, the day after the accident. She had had a slight amount of bleeding, and the heart tones of the baby were audible but distant and weak. Five days later she still had the bruises over the abdomen, and there was no fetal movement. Fetal EKGs on November 28 and December 1 reflected no heart tones, and the diagnosis was intra-uterine fetal death. In the doctor's opinion, the trauma from the collision caused the death of the child.

On January 27, 1961, after about eight hours of spontaneous labor, plaintiff delivered a stillborn female infant weighing a pound and fourteen ounces. The doctor had recommended that, although the child was dead, plaintiff should carry it until normal birth. She knowingly carried the dead child in her body from December 2, 1960 until January 27, 1961, almost two months. Dr. Nix stated that the mental condition of plaintiff, carrying the dead child, was depressed, and "the longer she carried it the more depressed she got." This resulted also in irritability, insomnia, and some pain, for which plaintiff was midly sedated.

Mrs. Occhipinti also testified about her extreme depression during this period. She said that she had physical pain and suffering from the accident itself until the bruises on her stomach healed, but the record does not reflect how long that was, although it was more than five days. Her medical expenses were around $500.

██ Viability is the stage at which the fetus is able to survive when separated from its mother — the ability to survive outside the uterus. Gullborg v. Rizzo, 331 F. 2d 557 (3d Cir. 1964). Dr. Nix's testimony is not clear on whether the fetus was viable at the time of the accident, at about five and one-half months of age. His testimony warrants the implication that it was not viable, and counsel for both sides assume that it was not.

### III.

This suit was not brought under the wrongful death statute. Miss. Code Ann. § 1453 (1956). It was instituted by the mother for personal injuries to her. The declaration alleged that she was pregnant with child at the time, and as a direct result of the accident, the child died; that plaintiff sustained great mental and physical suffering as a result of the injuries, plus medical expenses. In his opening statement to the jury, plaintiff's counsel said that he expected to show that she was

pregnant with child. Defendant's objection was overruled, but the court said, "In connection with the objection, I think I should state that you are not suing and there is not involved in this case any death benefits of this child. The only involved injury is to the mother. She is not asking anything for the death of the child, and the jury is not to give anything for that. It is not involved in this case."

Defendant was granted this instruction:

The Court instructs the jury for the defendant that if you should find from a preponderance of the evidence in this case that at the time the collision occurred the plaintiff was pregnant and that she suffered personal injuries in the collision which proximately resulted in the loss of the fetus which she was carrying, and if you should further find from the evidence that the loss of said fetus was the result of any negligence of the defendant still you cannot return a verdict for the plaintiff for the loss of said fetus.

Rainey v. Horn, 221 Miss. 269, 72 So. 2d 434 (1954), held that a cause of action accrued under the wrongful death statute by the parents against a doctor, when a viable infant (almost nine months) was born dead as a result of the doctor's negligence. It said "that an unborn child, after it reaches the prenatal age of viability," when it can survive outside the uterus, "is a person," and if the child dies "before birth as the result of the negligent act of another, an action may be maintained for its death under the wrongful death statute." The decision was limited to that holding, and it was stated that the court did not "pass upon the question of the negligent injury or death of a fetus at an earlier age than stated above."

In the instant case we do not reach or consider whether a right of action accrues under the wrongful death statute for death which occurred while the fetus was non-

viable. See Kelly v. Gregory, 282 App. Div. 542, 125 N.Y.S. 2d 696 (1953); Puhl v. Milwaukee Automobile Ins. Co., 8 Wis. 2d 343, 356, 99 N.W. 2d 163, 170 (1959); Note, 39 Cornell L. Q. 542 (1954); Prosser, Torts 175 (1955); Note, 29 N.Y.U. L. Rev. 1154 (1954); 2 Harper & James, Torts § 18.3 (1956).

▆▆ ▆ Here the prenatal injury resulted in the death of a non-viable child before birth. The mother may recover for her own injuries. The question is whether those injuries of the mother may include the effects of the death of the fetus. By way of emphasis, we are not concerned here with whether the estate of an unborn, non-viable child may have a separate recovery under the wrongful death statute. The mother seeks to recover for her injuries only, and asserts that they include the loss of the child, as a particular, independent element of damages in her action. We do not agree with that position, but we hold that the trial court erred in excluding from the consideration of the jury the effects upon the mother of the death of her unborn child.

▆▆ ▆ With the possible exception of Alabama, in a suit by a mother for personal injuries resulting in a miscarriage or loss of unborn child, compensation may be awarded for the physical and mental suffering occasioned by the miscarriage or loss, but recovery cannot be had by her for the death of the unborn child. Annot., 10 A.L.R. 2d 639, 640 (1950); Snow v. Allen, 227 Alt. 615, 151 So. 468 (1933). Accordingly, a pregnant woman, who by reason of injuries negligently inflicted suffers a miscarriage or loss of unborn child, is entitled to recover such damages as will fairly compensate her for the mental and physical pain and suffering, and any impairment of her health occasioned by the miscarriage. 15 Am. Jur. *Damages* § 82 (1938). Moreover, the pain and suffering which would naturally have come to the mother cannot be deducted from that occasioned by the miscarriage.

■■ Mental anguish is a proper element of damage insofar as it is a part of the mother's personal injury. She is entitled to recover for her mental distress due to her fear or apprehension before the birth of the child that it will be deformed in consequence of such negligence, of her fear, apprehension, or knowledge, as in this case, that the child is dead, as well as for her disappointment at the birth of the dead child. *Ibid.*, § 82. In short, where a pregnant woman, by reason of injuries for which the defendant is liable, suffers a miscarriage, mental anguish attending it is a proper element of her damages. Annot., 145 A.L.R. 1104, 1105 (1943). As the Restatement of Torts phrases it, in an action by the mother for a tort which has caused her physical harm, "damages can be included for the pain, suffering and mental distress caused by the death of the child before birth or immediately afterwards." 4 Rest., Torts § 869 (1939).

■■■ The jury is allowed to consider the case with all its facts, and to take into account not only the physical pain, but also mental suffering, in determining damages. This involves an appraisal of the nature of the injury, and cannot exclude from consideration of the jury the fact that the physical and mental suffering of the mother, by reason of such an injury, would be perhaps more intense than in the case of an ordinary injury. Tunnicliffe v. Bay City Consol. Ry., 102 Mich. 624, 61 N.W. 11 (1894).

■■ The principal reason for this rule, that the mother cannot recover for the death of the unborn child, as a separate item of damages, is that she is suing for her own personal injuries, and therefore only elements pertaining to them are pertinent. But insofar as the loss of the child affects her injuries, it may be shown and considered as affecting the extent of her personal injuries, her pain, physical and mental suffering, and impairment of her health. Stafford v. Roadway Transit

Co., 70 F. Supp. 555, 570 (D. C. Pa. 1947), *aff'd,* 165 F. 2d 920 (3d Cir. 1948).

In Berg v. New York Society for Relief, where the hospital gave an incorrect blood transfusion causing death of an unborn fetus, the court, discussing the elements of damages, observed that after ''Mrs. Berg discovered the effect that the transfusions would have upon her pregnancy, she became nervous, irritable, and apprehensive. It is clear that she suffered great mental anguish and a severe shock to her nervous system. . . . Such type of injury is compensable. . . .'' 136 N.Y.S. 2d 528, 531 (1954), *rev'd,* 286 App. Div. 783, 146 N.Y.S. 2d 548, *aff'd,* 1 N.Y. 2d 499, 136 N.E. 2d 523 (1956).

█ █ In the instant case, Mrs. Occhipinti is entitled to recover such damages as will fairly compensate her for her mental and physical pain and suffering, and any impairment of her health occasioned by the death of the unborn baby. For two months after she learned that her child was dead, upon her doctor's advice she carried it in her body, and became depressed, nervous, irritable and apprehensive, suffering mental anguish. Although she cannot recover for the death of the unborn child, she may receive damages for her own physical and mental suffering occasioned by its death.

Apparently the only case holding a contrary view is Snow v. Allen, 227 Ala. 615, 151 So. 468 (1933). On this point that case is somewhat ambiguous. We decline to apply Snow v. Allen, because of its ambiguity and inconsistency with the otherwise universal weight of authority. In summary, in a suit by the mother for her own personal injuries, the death of the unborn child is not a particular, independent element of damages in her action, but that fact may be considered by the jury in determining proper compensation to her for the mental and physical pain and suffering caused by its death.

█ █ In view of the foregoing rule, the quoted instruction granted defendant was erroneous and mislead-

ing, as was the statement of the trial court to the jury during the opening arguments. The statement that the jury could not include in its verdict "for the plaintiff" damages "for the loss of said fetus," where the plaintiff suffered personal injuries "which proximately resulted in the loss of fetus which she was carrying," is only partly correct. In effect it tells the jury that it must ignore the fact of the death of the unborn child, that plaintiff is not entitled to recover for her own mental and physical pain and suffering occasioned by the death of the unborn child, caused by the defendant's negligence. This instruction and the ruling of the court on opening argument are reversible error.

██ ██ Moreover, the evidence shows that the principal negligence causing the collision was that of Rheem's driver, the jury's verdict indicated that it applied to appellant substantial contributory negligence, the instruction erroneously told the jury that it could not consider the death of the unborn child in fixing appellant's damages, and appellant's medical bills were $500. These factors show that the amount of the verdict was grossly inadequate.

Accordingly, the judgment of the circuit court is affirmed as to liability, and the cause is reversed and remanded on the issue of damages only, for further proceedings in accordance with this opinion. Vaughan v. Bollis, 221 Miss. 589, 73 So. 2d 160 (1954).

Affirmed on liability, and reversed and remanded on damages only.

*Lee, C. J., and Rodgers, Jones and Patterson, JJ.,* concur.