804 A.2d 1151

Stacey SMITH

v.

Diana M. BORELLO.

Misc. No. 13 Sept. Term, 2001.

Court of Appeals of Maryland.

Aug. 22, 2002.

Dwayne A. Brown (A. Jai Bonner and Jerry Edward Jones, on brief), Baltimore, for appellant.

Alan R. Siciliano (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, LLP, on brief), Lanham, for Appellee.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, and BATTAGLIA, JJ.

WILNER, Judge.

We respond in this Opinion to a question certified to us by the United States Court of Appeals for the Fourth Circuit.

In January, 2000, Stacey Smith and Diana Borello were involved in an automobile accident in Baltimore City. Smith was 19 weeks pregnant at the time, and, as a result of the accident, suffered a miscarriage and lost the baby. She sued Borello in the Circuit Court for Baltimore City for negligence, but Ms. Borello, a New Jersey resident, removed the case to the U.S. District Court for the District of Maryland where, in due course, Ms. Smith and Frank Holliday, the alleged father of the unborn child, filed an amended complaint.

In Count I of the amended complaint, Smith repeated her claim of negligence on the part of Ms. Borello and contended, in somewhat redundant paragraphs, that, as a result of that negligence she sustained serious bodily injuries and the loss of her unborn child and that she "suffered pecuniary loss, mental

anguish, severe emotional distress, and emotional pain and suffering." In Count II, Holliday averred that, as a result of Borello's negligence, he suffered "mental anguish, loss of society, companionship, comfort, protection, attention, care, advice, counsel, filial care, mental anguish, and emotional pain and suffering, among other things due to the death of his unborn child."

The District Court treated all of Count II and part of the claim made by Smith in Count I pertaining to the loss of the child as wrongful death actions which, because the fetus was neither viable nor born alive, the court held were barred under this Court's holding in *Kandel v. White*, 339 Md. 432, 663 A.2d 1264 (1995).[1] On that premise, it entered summary judgment for Borello on Count II and, through a partial summary judgment, evidentiary rulings, and jury instructions, precluded Smith from recovering under Count I any damages for grief and emotional distress arising from the loss of the child.

There were several such rulings regarding Smith's action. At the commencement of trial, the court made clear that, although Smith could properly claim medical expenses incurred in the delivery of the stillborn fetus and damages for the pain and suffering resulting from the injuries to her, she was not entitled to any recovery for emotional pain and grief suffered by her as a result of the loss of the fetus. It later precluded her obstetrician from testifying about Smith's grief and depression from the loss of the child. When Ms. Smith began to testify about her excitement over being pregnant and her plans for the child, the court interrupted, excused the jury, and instructed her and her attorney that her devastation over the loss of the child, her buying baby presents, her plans for the future, and the fracturing of her hopes and dreams were all irrelevant and inadmissible. It then instructed the jury that statements about her excitement and her plans for the child were inadmissible and that the law did not permit

---

1. Ms. Smith did not contest that, at 19 weeks, the fetus was not viable-could not have survived had it been born alive.

recovery for emotional pain, distress, or grief suffered as a result of the loss of the child—an instruction it repeated at the end of the case. Finally, the court precluded Ms. Smith from testifying about being unable to work because of depression.

We are not concerned here with the judgment entered on Count II; it is not clear to us whether Mr. Holliday ever appealed that judgment, but, in any event, the issue as to him is not encompassed within the certified question. As limited by the court, Count I was submitted to a jury, which found Borello negligent and returned a verdict in Smith's favor in the amount of $14,382—$1,839 for past medical expenses, $2,443 for past loss of earnings, and $10,000 for non-economic damages. Aggrieved at the limitations imposed by the court, Smith appealed to the U.S. Court of Appeals for the Fourth Circuit, contending that, despite some of the language in her pleading, her claim was not in the nature of a wrongful death action and that she was entitled to recover, as part of her personal damages, for the emotional distress over the loss of the unborn child. Though conceding that she may not recover damages for the wrongful death of her non-viable fetus, she argued that "she can recover, as personal injuries to herself, the injuries to her fetus in utero (as part of her body), as well as for the emotional distress and other mental damages caused by the miscarriage and the loss of her child."

This being an issue of Maryland law in the case, unsettled by this Court, the Federal appellate court, invoking the Maryland Uniform Certification of Questions of Law Act (Maryland Code, §§ 12–601 to 12–613 of the Courts and Judicial Proceedings Article), certified to us the following question:

"Whether, and to what extent, the injured mother of a previable fetus, miscarried as a result of a defendant's negligence can recover as damages for medical expenses, lost wages, pain and suffering, emotional distress, emotional trauma, anguish, depression and/or grief resulting from the loss of her fetus?"

It may be helpful, in introducing our answer to that question, to point out that, when tortious conduct causes

injury or death to one or more persons, three different causes of action may arise, depending on the circumstances. If a person is injured but not killed, the person may sue for his or her own economic and non-economic damages—loss of wages, medical and other expenses, disfigurement, and physical and emotional pain and suffering caused by the tortious conduct. If a person is killed, two causes of action may arise. In what has been referred to as a "survival" action, the personal representative of the victim may sue to recover, for the estate of the victim, damages for the economic and non-economic losses suffered by the victim prior to his or her death—the damages that the victim would have been able to recover had he or she survived. *See* Maryland Code, § 6–401 of the Courts and Judicial Proceedings Article; *Jones v. Flood,* 351 Md. 120, 122–23, 716 A.2d 285, 286 (1998); *Beynon v. Montgomery Cablevision,* 351 Md. 460, 474–75, 718 A.2d 1161, 1168 (1998). By reversing the common law rule that abated actions for personal injuries on the death of the injured party § 6–401 simply preserves the common law action that the decedent would have had.

■ In addition, if the deceased victim left a parent, spouse, or child (or, in the absence of such a person, any other person related to the victim by blood or marriage and who was substantially dependent on the victim), that person may sue, on his or her own behalf, for certain losses the person suffered by reason of the wrongful death of the victim. *See* Md.Code, §§ 3–901 to 3–904 of the Courts and Judicial Proceedings Article. That is the "wrongful death" or "Lord Campbell's" action. As presently codified, it permits the defined class of persons to maintain an action against a person whose "wrongful act" causes the death of another. The term "wrongful act" is defined to mean "an act, neglect, or default . . . which would have entitled the party injured to maintain an action and recover damages if death had not ensued." *Id.* § 3–901(e).

■ Many of the cases in which we have examined the relationship between these various actions have involved survival and wrongful death actions, as those two often coexist

and are prosecuted together. As we pointed out in *Stewart v. United Elec. L. & P. Co.,* 104 Md. 332, 339, 65 A. 49, 52 (1906), although those actions grow out of the same wrongful conduct, they are distinct: "[they] are by different persons, the damages go into different channels, and are recovered upon different grounds . . . ." *See also Jones v. Flood, supra,* 351 Md. at 126–27, 716 A.2d at 288 and cases cited therein. Here, it is clear that no survival action was filed, but because the physical trauma inflicted upon Ms. Smith also caused the death of her unborn fetus, for which she seeks emotional damages that, in Borello's view, are recoverable, if at all, only in a wrongful death action, the relationship at issue is between her common law action for injuries to herself and the cause of action for the wrongful death of her unborn child. It is a different mix.

The issue underlying the certified question arises from the conclusion by the District Court, no longer contested by Ms. Smith, that *Kandel v. White, supra,* 339 Md. 432, 663 A.2d 1264, precludes a wrongful death action based on the prenatal death of a non-viable fetus. The point sought to be made by Borello is that a recovery for grief over the wrongful death of a child is allowable *only* in a wrongful death action and that, if such an action is not allowed under the circumstance at issue, the mother cannot be permitted to avoid the effect of *Kandel* by recovering those damages in her own personal injury action.

*Kandel* built on and discussed three earlier cases. In *Damasiewicz v. Gorsuch,* 197 Md. 417, 438, 79 A.2d 550, 559 (1951), we held that a child who was born alive with injuries sustained while still in his mother's womb could recover for those injuries. *Damasiewicz* was obviously neither a wrongful death nor a survival action but simply recognized the right of a live person to sue for injuries caused to him or her, even though those injuries were inflicted prior to birth. In *State v. Sherman,* 234 Md. 179, 182, 198 A.2d 71, 72 (1964), a woman in her ninth month of pregnancy was in an automobile accident, as a result of which the baby, clearly viable, was delivered stillborn. Both survival and wrongful death actions were brought, and the issue was whether either would lie. Not-

withstanding that *Damasiewicz* was neither a wrongful death nor a survival action, we found it "virtually controlling." *Sherman*, 234 Md. at 183, 198 A.2d at 72. We reasoned that, if a viable child who dies shortly after birth may sue for prenatal injuries, its rights should not be cut off simply because it dies prior to birth. That, of course, would justify the survival action. Because, as a result, "the party injured" would have had a cause of action, we also concluded that the wrongful death action was permissible. Both statutes—the survival statute and the wrongful death statute—we declared to be "remedial and designed to close a gap in the preexisting law." *Id.* at 184, 198 A.2d at 73.

The third case discussed in *Kandel* was *Group Health Ass'n v. Blumenthal*, 295 Md. 104, 453 A.2d 1198 (1983). Due to the alleged malpractice of certain health-care providers, the plaintiff gave birth, prematurely, to a non-viable, four-and-a-half month old fetus, who was born alive but who died within hours after delivery. We held that a wrongful death action could lie in that circumstance, finding it incongruous to recognize a child as alive for all purposes other than to sue for its injuries. As in *Sherman*, we tacitly concluded that, because the child would have a cause of action based on the tortious conduct of the defendant, the parents' wrongful death action also would lie.

*Kandel* arose from an automobile accident in which a woman eight weeks pregnant was severely injured and ultimately died. Prior to her death, but as a result of the injuries she sustained, she suffered an incomplete abortion of the fetus. Several actions were pled. Estates were opened for the mother and the child, and the personal representative filed survival actions on behalf of each. The mother's mother filed two wrongful death actions, one as the surviving mother and one as the surviving grandmother. The Circuit Court dismissed both the personal representative's survival action and the grandmother's wrongful death action with respect to the fetus on the ground that, as the fetus was neither born alive

nor viable at the time of its death, neither such action could lie, and we affirmed that ruling.[2]

 We concluded, from our analysis of the earlier cases, that, although viability has no relevance when the child is born alive, as the action is then for the death of "an independent living person with a separate legal existence who suffered injuries," it does have significance when the fetus dies prior to delivery. *Kandel, supra,* 339 Md. at 437–38, 663 A.2d at 1267. In reaching that conclusion, which was the majority rule around the country, we noted that (1) to permit a wrongful death action with respect to a non-viable fetus could create a conflict with the mother's absolute Constitutional right under *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), to abort her pregnancy prior to viability of the fetus, (2) under *Roe v. Wade,* a non-viable fetus is not regarded as a "person," at least for purposes of an equal protection analysis, and (3) as a matter of public policy, the wrongful death statute should not be construed to create civil liability for the prenatal death of a non-viable fetus.[3] Given that decision, the District

---

2. It seems curious that an even more basic issue was not raised. There is nothing in § 3–904 of the Courts and Judicial Proceedings Article that gives a grandparent, as such, standing to file an action for the wrongful death of a grandchild. Automatic standing is given in § 3–904(a) only to a spouse, child, or parent of the deceased person. Section 3–904(b) provides that, if there are no such persons, any person related to the deceased by blood or marriage "who was substantially dependent upon the deceased" may file the action. There was no allegation by the grandmother that the fetus had no surviving parent or that she was substantially dependent on the eight-week-old fetus. In the absence of such an allegation, it would appear that her action based on the wrongful death of the fetus should have been dismissed on that ground.

3. Regrettably, throughout the opinion, we spoke of a cause of action for wrongful death "on behalf of" a non-viable fetus and thus, to some extent, conflated the survival and wrongful death actions, both of which were before us. It is important to clarify that, unlike a survival action, which *is,* in a sense, on behalf of the deceased person, a wrongful death action is *not* on behalf of the deceased person or fetus. As we have pointed out many times, it is on behalf of the surviving person—one of the statutory class—who files the action to recover for his or her own damages arising from the death of the decedent. Despite the somewhat

Court in this case was entirely correct in concluding that a wrongful death action could not be maintained by Ms. Smith by reason of the prenatal death of her non-viable fetus. The extent to which that preclusion bars a recovery, in Ms. Smith's action for her own personal injuries, for distress arising from the loss of the fetus is another matter.

That very issue was lurking in a case that came before us more than 40 years ago, although, because it was not preserved, we declined to reach it. In *Rephann v. Armstrong*, 217 Md. 90, 141 A.2d 525 (1958), a woman eight months pregnant was involved in an automobile accident and, as a result, suffered a miscarriage; the baby was born dead. In her action against the other driver, her doctor was permitted to testify that the baby died after the accident but before the miscarriage. Although the court instructed the jury that it could not award any damages for the loss of the child—an instruction to which neither party objected—the defendant appealed from the $5,750 judgment awarded to the plaintiff, contending that the verdict was excessive and that, despite the instruction, the jury must have awarded some amount for the loss of the baby. In a *per curiam* opinion, we affirmed the judgment on the ground that the size of a verdict is rarely a ground for appellate review. To the extent that the defendant was complaining about the clarity of the court's instruction, we noted that, because no objection was lodged by the defendant, its correctness was not before us. Because the plaintiff also did not object to the instruction and did not cross-appeal, we had no occasion to consider whether the instruction was correct from the plaintiff's point of view.[1]

ambiguous language used in the opinion, it is clear that our holding in *Kandel* applied to *both* the survival and the wrongful death actions—that neither will lie with respect to a non-viable fetus who dies prior to delivery.

4. When *Rephann* was tried and decided, solatium damages were not recoverable in a wrongful death action. Recovery was limited to the pecuniary loss that the plaintiff sustained by reason of the decedent's death. As explained in *Employers Liability Assurance Corp. v. Balto..&*

The courts in other States are in considerable disagreement over the extent to which, and on what theory, a woman who loses an unborn child as the result of another's tortious conduct may, as part of her own personal injury action, recover for the mental anguish she suffered as a result of the aborted pregnancy and the loss of the child. In States where emotional damages are not allowed generally in the absence of some independent physical injury, the issue, particularly in malpractice cases against obstetricians arising from stillbirths, has sometimes hinged on whether the plaintiff established the requisite independent physical injury. Courts that have allowed some recovery have relied on different theories in doing so.

---

*O.R.R.*, 173 Md. 238, 245, 195 A. 541, 544 (1937), damages were limited:

> "to the loss of benefits which the decedent was under a duty to render to the plaintiff because of the relation between them, to the loss of service which the plaintiff was entitled to demand and receive of the decedent, or, in the absence of any legal duty resting upon the decedent to give service or support to the plaintiff, to the loss of benefits which the plaintiff, because of the decedent's past conduct, might reasonably have expected to receive from him had he lived."

With that limitation, emotional damages for the grief over the loss of a child could not be recovered in a wrongful death action, regardless of whether the fatal injury was inflicted prior to or after birth or whether, if inflicted prenatally, the child was viable or non-viable at the time or was eventually born alive or dead. Notwithstanding that *Rephann* was not a wrongful death action, that preclusion may well have influenced the jury instruction given in the case. In 1969, the Legislature expressly criticized that narrow interpretation and overturned it by statute. By 1969 Maryland Laws, chapter 352, it amended the wrongful death act to provide that, upon the death of a spouse or minor child, damages · were not limited to pecuniary loss or benefit "but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education, where applicable." In *Daley v. United Services Automobile Assoc.*, 312 Md. 550, 553 n. 2, 541 A.2d 632, 633 n. 2 (1988), we referred to those kinds of damages as "solatium damages." Other courts have characterized them as damages for loss of filial consortium. With some style changes and an extension to include the death of a parent as well, that expansion now appears in § 3–904(d) of the Courts and Judicial Proceedings Article. In light of *State v. Sherman, supra,* 234 Md. 179, 198 A.2d 71, the instruction given in *Rephann*, at least in a wrongful death action involving a viable fetus, would be erroneous.

Some courts that have allowed a recovery for distress arising from the death of a non-viable fetus have done so on the theory posited by Ms. Smith in this case-that prior to viability (or, in some States, prior to birth) the fetus is essentially a part of the mother's body and that she may recover damages for the loss of that bodily part. An early statement of the "body part" theory came in *Dietrich v. Northampton*, 138 Mass. 14 (1884), where a woman between four and five months pregnant slipped on a defect in a highway, fell, and injured herself. The fall caused a miscarriage; the baby, which the court assumed was not viable, was either stillborn or lived but a few minutes. The mother sued and recovered damages for her injuries. A wrongful death action was then filed on behalf of the mother, which was dismissed. Although affirming that ruling—that the wrongful death action could not be maintained—the court, speaking through Justice Oliver Wendell Homes, noted that "as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered at all was recoverable by her...." *Id.* at 17. A similar conclusion, and expression, is found in *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 56 N.E. 638 (1900). The action there was by the child, for injuries sustained prior to birth. The court held that no such action would lie because, at the time the injuries were inflicted, the child was "a part of the mother." *Id.* at 640.

Although neither of those cases actually sustained an action by the mother for emotional damages arising from the loss of her unborn child, the theory espoused in them did serve as the basis for such a result in *Snow v. Allen*, 227 Ala. 615, 151 So. 468 (1933), a malpractice action by the mother against her obstetrician. In response to the defendant's claim that the action was one to recover damages for the prenatal death of the child, the court stated:

"As we construe the complaint, no recovery of damages is sought on account of the death of the child, but for the pain and anguish suffered by the mother on account of its death, occasioned by the negligence of the defendant. If the

mother was caused to suffer physical pain by reason of the killing of the unborn child, occasioned by the negligence of the defendant, no one, we assume, would argue that she could not recover in this action for such pain; and, likewise, if on account of the negligent destruction of the child, in its delivery, the mother also suffered distress of mind, a recovery could be had for such mental anguish. This is just what the plaintiff claims in the complaint with reference to the killing of her unborn child."

*Id.* at 471.

Citing *Dietrich* and *Allaire*, the Alabama court concluded that:

"the mother, in an action against the attending physician, may recover, in one and the same action, damages for all injuries sustained by her, by reason of—proximate result of—the negligence of the physician in and about the parturition of the infant, including the death of the infant, before it is severed from the mother . . . ."

*Id. See also Taylor v. Baptist Medical Center, Inc.,* 400 So.2d 369, 374–75 (Ala.1981) (allowing recovery for mental anguish accompanying death of infant in delivery in malpractice action against obstetrician). In *Modaber v. Kelley,* 232 Va. 60, 348 S.E.2d 233, 236–37 (1986), the Virginia Supreme Court, noting that, under Virginia law an unborn child is a part of the mother until birth, held that, although the mother could not recover damages "ordinarily recoverable in a wrongful death action"—i.e., for the anticipated loss of the child's society, companionship, comfort, or guidance, or for the loss of income or services from the child—nonetheless "injury to an unborn child constitutes injury to the mother and that she may recover for such physical injury and mental suffering associated with a stillbirth."

Other courts have allowed recovery without resorting to the "body part" theory. In *Valence v. Louisiana Power & Light Co.,* 50 So.2d 847 (La.Ct.App.1951), a woman was injured in a bus accident while two to four months pregnant. About five months later, her baby was born dead, a fact that she attrib-

uted to the injuries she received in the accident. The court held that, although there could be no recovery by or on behalf of the child, she could recover for the emotional damages arising from the loss of the child. It noted:

> "There can be no doubt at all that there could be a recovery for a result of an accident which might cause sterility, or which might otherwise prevent parents from having children. If, as the result of actionable negligence, a husband or a wife should be so injured that either, in the future could not expect to produce children, surely this would be taken into consideration as an item of damage. It necessarily follows, we think, that when parents are actually expecting the arrival of a child, and they are deprived of the fruition of that great expectation by the actionable negligence of someone else, they may recover from the tortfeasor as an item of damage for that particular loss."

*Id.* at 849.

Most, if not all, of the courts that have considered the issue have recognized that, at least where there is evidence of some independent physical injury to the mother, she may recover, in her own negligence action, for emotional distress arising from a miscarriage or stillbirth attributable to the defendant's conduct. The major issue with which they have wrestled is defining the kinds of damages that are allowable in the mother's action so as neither to *duplicate* damages afforded in a wrongful death action nor to permit damages that, under the State's law, clearly are *not* allowed, even in a wrongful death action. The demarcation lines drawn by the courts are not always consistent and they are not always clearly articulated. They generally *exclude* solatium or loss of filial consortium damages, which, depending on the law of the other State, are either recoverable *exclusively* in a wrongful death action or are not recoverable at all. They generally *include* damages for emotional distress over the unexpected termination of the pregnancy and the impact of the miscarriage or stillbirth itself. *See,* for example, *Carey v. Lovett,* 132 N.J. 44, 622 A.2d 1279 (1993); *Abdallah v. Callender,* 1 F.3d 141 (3d Cir.1993); *Tanner v. Hartog,* 696 So.2d 705 (Fla.1997); *Bolin v. Wingert,*

764 N.E.2d 201 (Ind.2002); *Occhipinti v. Rheem Manuf. Co.*, 252 Miss. 172, 172 So.2d 186 (Miss.1965); *Thomas v. Carter*, 234 Ga.App. 384, 506 S.E.2d 377 (1998); *Sesma v. Cueto*, 129 Cal.App.3d 108, 181 Cal.Rptr. 12 (1982); *Big Sandy R.R. v. Blankenship*, 133 Ky. 438, 118 S.W. 316 (Ky.Ct.App.1909); *Gilman v. Metropolitan Transit Authority*, 345 Mass. 202, 186 N.E.2d 454 (1962); *Missouri Pac. R.R. v. Hall*, 186 Ark. 270, 53 S.W.2d 432 (1932).

California attempted to deal with this in *Burgess v. Superior Court (Gupta)*, 2 Cal.4th 1064, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992), a malpractice action against an obstetrician for the negligent delivery of a child who died from the injuries sustained during the delivery. The court rejected the broad argument that the mother could not recover for injury to the fetus as "ignor[ing] the realities of pregnancy and childbirth." *Burgess*, 9 Cal.Rptr.2d 615, 831 P.2d at 1202. It explained that "[i]n addition to the physical connection between a woman and her fetus, there is an emotional relationship as well," and that "[t]he birth of a child is a miraculous occasion which is almost always eagerly anticipated and which is invested with hopes, dreams, anxiety, and fears." *Id.* at 1203. The court acknowledged and confirmed that, under California law, the mother could not recover damages for loss of filial consortium, but held that such preclusion did not bar all recovery for emotional distress in the mother's negligence action. Some portion of her distress, the court noted, may have origins distinct from loss of consortium with the child, and it held that:

> "to the extent ... that [the mother's] emotional distress arose from the 'abnormal event' of participating in a negligent delivery and reacting to the unexpected outcome of her pregnancy with resulting 'fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain' [citations omitted] resulting from defendant's breach of duty, then [the mother's] emotional distress is of the type for which we have previously recognized recovery should be provided...."

*Id.* at 1209. *See also Zavala v. Arce,* 58 Cal.App.4th 915, 920, 68 Cal.Rptr.2d 571 (1997).

In *Tanner v. Hartog, supra,* 696 So.2d 705, the court considered whether an expectant mother and father could recover emotional damages resulting from a stillbirth caused by the negligence of another. Noting that the primary obstacle to an action for "negligent stillbirth" was the impact rule, requiring an accompanying physical injury to the mother, the court rejected the suggestion that such an injury could be found in the injury to the baby in the mother's uterus—the "living tissue of the mother"—and instead chose to recognize the action on public policy grounds. *Tanner,* 696 So.2d at 707. Although acknowledging that legitimate arguments could be directed against any theory that would allow recovery in the case, the court concluded that "it is difficult to justify the outright denial of a claim for the mental pain and anguish which is so likely to be experienced by parents as a result of the birth of a stillborn child caused by the negligence of another," and, as a result, it recognized an action for negligent stillbirth, in which such damages could be recovered by *both* expectant parents, even in the absence of some separate physical injury to the mother. *Id.*

The *Tanner* court did not view its decision as a circumvention of the State's wrongful death statute, noting that the action for negligent stillbirth "is directed toward the death of a fetus" and the wrongful death action "is applicable to the death of a living person." *Id.* Moreover, in the negligent stillbirth action, the damages "would be limited to mental pain and anguish and medical expenses incurred incident to the pregnancy." *Id.* at 709.

In *District of Columbia v. McNeill,* 613 A.2d 940 (D.C.1992), a mother sued her obstetrician for allowing the pregnancy to extend too long, which resulted in a stillborn child. She sought damages for both physical pain and emotional distress. Though acknowledging District of Columbia cases that disallowed recovery in a wrongful death action for grief over the death of a child *in utero* or for emotional distress based solely

on the injury to another, the court concluded that the mother, who carried the dead fetus for at least 24 hours, could recover for the physical pain and emotional distress. Recounting evidence of her inability to sleep after delivery of the stillborn infant, the shock she suffered, and the nightmares she continued to experience regarding the birth and the stillborn child's appearance, the court, citing *Modaber v. Kelley, supra,* 348 S.E.2d at 237 and *Snow v. Allen, supra,* 151 So. at 471, held that a reasonable jury could have found that she suffered both physical and emotional injuries as a result of the defendant's negligence and affirmed the judgment in her favor.

A number of decisions, some of which are quite old, are to the same general effect. Although they expressly state that recovery may not be had for grief over the loss of the unborn or stillborn child, in effect what they deny is solatium or loss of consortium damages, not recovery for distress over the unanticipated termination of the pregnancy or having had to endure a miscarriage or stillbirth. *See McKillip v. Zimmerman,* 191 N.W.2d 706, 709 (Iowa 1971); *Duncan v. Martin's Restaurant, Inc.,* 347 Ill.App. 183, 106 N.E.2d 731, 734 (1952); *Tunnicliffe v. Bay Cities Consol. Ry.,* 102 Mich. 624, 61 N.W. 11, 12 (1894); *Berger v. St. Paul City Ry.,* 95 Minn. 84, 103 N.W. 724, 724–25 (1905); *Finer v. Nichols,* 158 Mo.App. 539, 138 S.W. 889, 891–92 (1911); *Bovee v. Danville,* 53 Vt. 183, 190–91 (1880); *Mehigan v. Sheehan,* 94 N.H. 274, 51 A.2d 632, 634 (1947). *Compare Andreasen v. Gomes,* 244 Neb. 73, 504 N.W.2d 539, 542 (1993) (denying recovery for negligent infliction of emotional distress over stillbirth resulting from obstetrician's negligence because the distress was not severe enough).

Some courts, citing the old case of *Bovee v. Danville,* 53 Vt. 183 (1880), have denied recovery on the ground that the damages are too speculative. *See,* for example, *Hosty v. Moulton Water Co.,* 39 Mont. 310, 102 P. 568, 570 (1909); *Fehely v. Senders,* 170 Or. 457, 135 P.2d 283, 290 (1943); *Malone v. Monongahela Valley Traction Co.,* 104 W.Va. 417, 140 S.E. 340, 343–44 (1927). We do not agree with that approach. *See McAlister v. Carl,* 233 Md. 446, 455, 197 A.2d

140, 145 (1964); *Pickett, Houlon & Berman v. Haislip,* 73 Md.App. 89, 113 n. 13, 533 A.2d 287, 298 n. 13 (1987) ("It is hard to conceive of issues more complex than determining the damages resulting from infliction of emotional distress or sorting out multiparty, multicount contract suits, yet juries are constantly given those responsibilities."). This Court has long subscribed to the view that, in a tort action, the plaintiff is entitled to recover "for all damages naturally or necessarily flowing from the wrongful acts of the defendants." *Brown & Otto v. Werner,* 40 Md. 15, 20 (1874). In *Sloan v. Edwards,* 61 Md. 89, 99 (1883), we confirmed that "whatever injurious consequences result naturally from the wrongful act done, become elements of damage, and it is not necessary that the particular form or nature of the results should have been contemplated or foreseen by the wrong-doer." We later made clear that such damages include "emotional distress capable of objective determination." *Belcher v. T. Rowe Price,* 329 Md. 709, 734, 621 A.2d 872, 884 (1993); *Matthews v. Amberwood,* 351 Md. 544, 572, 719 A.2d 119, 132–33 (1998). In *Vance v. Vance,* 286 Md. 490, 501, 408 A.2d 728, 734 (1979), recovery was allowed for mental distress that took the form of nervousness, sleeplessness, spontaneous crying, and depression.

In a negligence action, this broad common law right of redress applies only to suffering and distress arising from some physical or other objectively determinable injury inflicted upon the plaintiff or to which the plaintiff is directly and immediately exposed, and not to that deriving solely from an injury inflicted upon someone else. *See Resavage v. Davies,* 199 Md. 479, 487–88, 86 A.2d 879, 883 (1952). To some extent, it is that nexus requirement that underlies the issue of whether recovery may be had for the loss of an unborn fetus. If the fetus is viable at the time of death or is ever born alive, it is regarded, in Maryland, as another person and some redress for its death—pecuniary losses, if any, and damages for loss of filial consortium as defined in the wrongful death statute—are available under that statute. The wrongful death statute does not encompass all of the emotional trauma that may arise from the destruction of an unborn fetus, however, and, if that

statute is not applicable, as in the case of a non-viable fetus who dies prior to delivery, it provides no redress at all. Yet to deny recovery for emotional distress caused to the mother from the wrongful and often traumatic termination of her pregnancy because it is not encompassed within or afforded by the wrongful death statute would be inconsistent with our common law jurisprudence and, indeed, with the law in most States.[5]

In attempting to define what is, and is not, recoverable in the mother's own personal injury action, the "body part" approach espoused in some of the cases and urged by Ms. Smith in this case has a purported Constitutional and a statutory basis. By effectively allowing abortions prior to viability, *Roe v. Wade* and its progeny permit that conclusion from a Constitutional perspective. Statutory support is found in the fact that, although Maryland Code, § 4–212 of the Health–General Article, requires that a death certificate be prepared and filed for each decedent, regardless of age, § 4–213 provides, as an exception to that requirement, that a death certificate is not required for the death of a fetus less than 20 weeks old.[6] We may, and do, take judicial notice of the fact that people who lose body parts or functions—the loss of a limb or organ, the loss of sight, hearing, mobility, sexual function, or physical attractiveness—often suffer serious and

---

**5.** RESTATEMENT OF TORTS (SECOND), § 456 states, in relevant part, that, "if [an] actor's negligent conduct has so caused any bodily harm to another as to make [the actor] liable for it, the actor is also subject to liability for ... fright, shock, or other emotional disturbance resulting from the bodily injury *or from the conduct which causes it* ....'' (Emphasis added). Comment e to that section emphasizes that "the liability is not limited to emotional disturbance resulting from the bodily harm itself, but includes also such disturbance resulting from the conduct of the actor." *Id.* at cmt. e.

**6.** We need not, and do not, regard the statute as establishing viability at 20 weeks. In *Kassama v. Magat*, 368 Md. 113, 119–20, 119 n. 6, 792 A.2d 1102, 1105–06, 1106 n. 6 (2002), we noted that the earliest suggestion of viability, under current medical technology, appears to be 23 weeks, that the survival rate prior to 25 weeks is quite low, and that no doctor in Maryland will perform an abortion on account of the fetus suffering from Down's Syndrome after 24 weeks.

demonstrable emotional distress over that loss, and, if the loss is the result of someone's negligent conduct, recovery may be had for the attendant emotional distress.

There is at least one major problem with that approach, however. Putting aside the question of whether a growing fetus—a life or potential life—can realistically be equated for this purpose with an anatomical body organ or part, resting liability for emotional distress over the loss of the fetus on that theory serves to limit the ability to recover to the loss of a non-viable fetus, and thus precludes a recovery, even for the kind of distress not compensable under the wrongful death statute, when the fetus is viable at the time of the injury. That, to us, makes no sense. The fact that viability or live birth may be critical to the recovery of loss of consortium or pecuniary damages under the wrongful death statute does not mean that either should be a factor in allowing a recovery for the emotional distress that may be attendant to the unanticipated termination of the pregnancy or to the distress over having to endure a miscarriage or stillbirth.

Drawing what wisdom we can from the decisions discussed above, we answer the certified question as follows:

A pregnant woman who sustains personal injury as the result of a defendant's tortious conduct and who, as part of that injury, suffers the loss of the fetus may recover, in her own action for personal injuries, for any demonstrable emotional distress that accompanies and is attributable to the loss of the fetus. The distress recoverable in that action includes that arising from the unexpected termination of her pregnancy and the enduring of a miscarriage or stillbirth. Where a sufficient factual premise is shown, it may include compensation for (1) the depression, anguish, and grief that arises from the termination of the pregnancy, the manner in which the pregnancy was terminated, and from the miscarriage or stillbirth—the distress of not having been able to carry through to a successful completion of the pregnancy, of having to carry a fetus or a child which is destroyed by someone else's tortious conduct, of having to witness at the time of miscarriage or

delivery the stillborn child or the fetal tissue that was to be her child—and (2) medical expenses reasonably incurred in the treatment of, and lost wages attendant to, that depression, anguish, or grief. It does *not* include, however, in the context of this case, pecuniary losses or solatium or loss of consortium damages recoverable under the wrongful death statute, whether or not that statute applies in the circumstance. The recovery, in other words, is for the psychic injury inflicted on the mother and not for her sorrow over the loss of the child. Recovery for that sorrow must be had, if at all, under the wrongful death statute.[7]

CERTIFIED QUESTION ANSWERED AS ABOVE SET FORTH; COSTS TO BE PAID ONE–HALF BY APPELLANT, ONE–HALF BY APPELLEE.

---

7. Given the redundancy in some of the averments of Smith's amended complaint and some ambiguity in the arguments made in the District Court, it is not entirely clear to us, on the record we have, whether, or to what extent, Smith is seeking any damages that would not be recoverable under our view of the Maryland law. That ultimately, however, is an issue for the Federal court to resolve.